UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROSE CHASE,

               Petitioner,

     v.

SUPERINTENDENT EILEEN
RUSSELL,[1]

             Respondent.

_____

**DECISION AND ORDER**

1:19-CV-00617 EAW-LGF

## I.    <u>INTRODUCTION</u>

*Pro se* petitioner Rose Chase ("Petitioner"), a prisoner in Respondent's custody, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). The matter was referred to United States Magistrate Judge Leslie G. Foschio pursuant to 28 U.S.C. § 636(b)(1). (Dkt. 15). Before the Court is the Magistrate Judge's Report and Recommendation recommending that the petition be dismissed (Dkt. 25) and Petitioner's timely objections to the Report and Recommendation (Dkt. 28). Prior to issuing the Report and Recommendation, the Magistrate Judge issued a Decision and Order (Dkt. 23) denying with prejudice Petitioner's third motion to stay the petition (Dkt. 21). The parties did not

---

[1]     Eileen Russell has succeeded Amy LaManna as the Superintendent of Bedford Hills Correctional Facility. *See* https://doccs.ny.gov/location/bedford-hills-correctional-facility (last accessed Apr. 12, 2024). Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to amend the official caption in this case to conform to the caption as set forth above.

pursue any review of that Decision and Order before the district court, nor did the district court engage in any such review.[2]

For the reasons below, the Court finds that the Decision and Order issued by the Magistrate Judge addressed a dispositive matter and therefore should have been resolved as a report and recommendation.  Therefore, the Court has reviewed the Decision and Order (Dkt. 23) under a *de novo* standard.  The Court agrees with the Magistrate Judge that Petitioner failed to demonstrate entitlement to a stay pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005).  However, the Court concludes that the Magistrate Judge erred in identifying which claims in the petition were exhausted, which claims were fully unexhausted, and which claims were unexhausted but should be deemed exhausted and procedurally defaulted.  As a result of these errors, Petitioner elected to withdraw some claims that were not fully unexhausted but instead should have been deemed exhausted and procedurally defaulted.

The Court accordingly rejects in part and accepts in part the Decision and Order. The Court finds that there are only two claims that are fully unexhausted and contribute to the petition being a mixed petition.  The remaining claims that were identified by the Magistrate Judge as fully unexhausted should have been deemed exhausted and procedurally defaulted.  The Court will reinstate all the previously dismissed claims. Petitioner will be afforded another opportunity to choose among the three procedural options available when a stay-and-abeyance of a mixed petition has been denied.  Petitioner

---

[2]     This matter was transferred to the undersigned on April 3, 2024.  (Dkt. 31).

also will be afforded an opportunity to attempt to overcome the procedural default of the deemed exhausted but procedurally defaulted claims.  The Court will defer ruling on the Report and Recommendation until after Petitioner responds to this Decision and Order.

## II.    **BACKGROUND**

In connection with the June 14, 2012 death of her husband, Adam Chase ("the decedent" or "the victim"), Petitioner was charged with second-degree (intentional) murder (New York Penal Law ("P.L.") § 125.25(1)), tampering with physical evidence (P.L. § 215.40(2)), and endangering the welfare of a child (P.L. § 260.10(1)).  (SR: 55-56).[3]  At a jury trial in Ontario County Court of New York State (Kocher, J.), the prosecution presented circumstantial and direct evidence of Petitioner's role in causing the victim's death, including Petitioner's videotaped statement (Dkt. 13-6) to police.  In that statement, Petitioner admitted that she pushed the decedent down two flights of stairs with the intent to kill him and secreted the body in the basement of their home for several weeks.[4]  She then placed the decomposing body parts in several trash bags and transported them in her

---

[3]    Citations to "SR:" refer to the Bates-stamped page numbers at the bottom of the state court records, filed by Respondent at Docket 13-2.  Citations to "H:" refer to pages of the pre-trial suppression hearing; citations to "T:" refer to pages of the trial transcript; and citations to "S:" refer to pages of the sentencing hearing.  These transcripts were filed by Respondent at Docket 13-5.  Citations to "VS:" refer to pages of the transcript of Petitioner's videotaped statement to Ontario County Sheriff's Investigators Lee Martin ("Investigator Martin") and John Falbo ("Investigator Falbo"), filed by Respondent at Docket 13-6.  All page citations are to the original pagination.

[4]    "In view of [Petitioner]'s conviction, [the Court] summarize[s] the facts in the light most favorable to the verdict."  *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012) (per curiam) (citing *United States v. Riggi*, 541 F.3d 94, 96 (2d Cir. 2008)).

car to a wooded property behind her mother's house. There she built a large bonfire, burned the decedent's remains, and disposed of the ashes and unburned bones in a trashcan. The endangering the welfare of a child count was based on the fact that Petitioner's young son was in the car when she transported the bags containing the decedent's body parts.

The jury returned a verdict convicting Petitioner of second-degree murder as well as the two lesser counts in the indictment. (SR: 54). She was sentenced on January 15, 2014, to 23 years to life on the second-degree murder conviction; one year and four months' to four years' imprisonment on the evidence-tampering conviction; and one year in jail on the child-endangerment conviction, those sentences to be served concurrently. (*Id.*).

On direct appeal, Petitioner's appellate counsel asserted the following grounds for relief: (1) the trial court's refusal to allow defense counsel to use *Rosario*[5] material (i.e., the text messages between the prosecutor and Investigator Martin) when cross-examining Investigator Martin denied Petitioner the right of confrontation under the Sixth Amendment

---

[5] Under the rule announced in *People v. Rosario*, 9 N.Y.2d 286 (1961), the prosecutor is required "to disclose to the defense (1) '[a]ny written or recorded statement,' (2) 'made by a person whom the prosecutor intends to call as a witness at trial,' and (3) 'which relates to the subject matter of the witness's testimony.'" *People v. Kelly*, 88 N.Y.2d 248, 251 (1996) (alteration in original (quoting N.Y. Crim. Proc. Law § 240.45(1)(a))). At the suppression hearing conducted on July 24, 2013, Investigator Martin testified that during his interrogation of Petitioner on December 13, 2012, he was exchanging text messages with Ontario County District Attorney R. Michael Tantillo ("prosecutor"), who was observing through a one-way window. (H: 132-33). At one point, the prosecutor sent a text message to Investigator Martin instructing him to "be more forceful" in his questioning of Petitioner. (H: 135-36). At trial, when defense counsel questioned Investigator Martin about the text message, the prosecutor objected on the basis of relevancy. The trial court sustained the objection, ruling that although defense counsel could establish the fact that the prosecutor sent the message, its contents were inadmissible. (T: 1632-35).

and was not harmless error because it prevented her from proving the involuntariness of her confession; (2) the prosecutor violated *Rosario* by failing to disclose, *inter alia*, text messages between the prosecutor and Investigator Martin; (3) the second-degree murder conviction was based on legally insufficient evidence, and the verdict was against the weight of the evidence; (4) the conviction for endangering the welfare of a child was based on legally insufficient evidence; and (5) the sentence was harsh and excessive and should be reduced in the interest of justice.  (*See* SR: 2, 5-6, 12-43).  A majority of the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") reversed the conviction for endangering the welfare of a child as unsupported by legally sufficient evidence.  *People v. Chase*, 158 A.D.3d 1233, 1234 (4th Dep't 2018); (SR: 237-39).  The judgment, as modified, was unanimously affirmed.  *See id.* at 1234-36.

Petitioner sought leave to appeal as to the Confrontation Clause issue based on the limitations on using the text messages during Investigator Martin's cross-examination, the *Rosario* violation involving the text messages, the legal sufficiency claim, and the sentencing claim.  (SR: 242-43).  The New York Court of Appeals denied leave to appeal on May 8, 2018.  *People v. Chase*, 31 N.Y.3d 1080 (2018); (SR: 248).

Petitioner filed her habeas petition on May 3, 2019.[6]  (Dkt. 1 at 9).[7]  The petition consists of a form Petition Under 28 U.S.C. § 2254 For a Writ of Habeas Corpus (*id.* at 1-9), a copy of the statement of facts from Petitioner's brief on direct appeal (*id.* at 10-14), a document consisting of individually-numbered paragraphs in which Petitioner asserts additional habeas claims and presents legal arguments (*id.* at 15-38), and two exhibits (*id.* at 39-44).  The petition asserts the following grounds for habeas relief:

1. The verdict for second-degree murder was against the weight of the evidence, and the prosecution's evidence was legally insufficient to prove causation and intent (*id.* at 6 ¶ 22A (under the heading for "Ground One" in the petition), 15-20) ("weight of the evidence claim" and "legal sufficiency claim," respectively);

2. The prosecution violated *Rosario* by failing to disclose the text messages exchanged by the prosecutor and Investigator Martin during the interrogation of Petitioner, specifically, a text directing Investigator Martin to "be more forceful" when questioning Petitioner (*id.* at 7 ¶ 22B (under the heading for "Ground Two" in the petition), 21-22, 35-37); and an email[8] in which the prosecutor allegedly instructed expert witness

---

[6]     The Court determines the date of filing by reference to the prison mailbox rule, which "provides that a *pro se* prisoner's habeas petition is deemed filed at the moment [s]he gives it to prison officials." *Hardy v. Conway*, 162 F. App'x 61, 62 (2d Cir. 2006) (collecting cases).  Because there is nothing in the docket to indicate when Petitioner handed her papers over to prison officials for mailing, the Court will utilize the date on which she signed her petition.  *Corrigan v. Barbery*, 371 F. Supp. 2d 325, 328 n.4 (W.D.N.Y. 2005).

[7]     Page citations to pleadings are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

[8]     The emails are from an individual named Kevin Henderson, who appears to be an employee of Ontario County, to Dr. Dirkmaat and other individuals asking them to send him an "introductory bio" in connection with an upcoming conference.  (Dkt. 1 at 40-41).  There is no mention of a trashcan, let alone Petitioner's criminal proceeding, in those emails.

Dennis Dirkmaat, Ph.D. ("Dr. Dirkmaat") to dispose of a trashcan that contained some of the victim's remains (*id.* at 22-24, 39-41) ("text message *Rosario* claim" and "email *Rosario* claim," respectively);

3. The prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), based on the belated disclosure of the text and email on which the *Rosario* claims are based (*id.* at 21-22, 35-37) ("text message *Brady* claim" and "email *Brady* claim," respectively);

4. Petitioner's right of confrontation under the Sixth Amendment and due process right to litigate the voluntariness of her confession were violated by the trial court's refusal to allow defense counsel to cross-examine Investigator Martin using the text messages exchanged with the prosecutor (*id.* at 21-22) ("text message Confrontation Clause claim");[9]

5. Petitioner's rights under the Sixth Amendment's Confrontation Clause were violated by the parties' evidentiary stipulation regarding the results of DNA testing on some of the decedent's remains (*id.* at 7 ¶ 22C (under heading for "Ground Three" in the petition), 24-26, 38) ("stipulation Confrontation Clause claim"); and by Silvia Chase's testimony about the contents of the cell phone belonging to her husband, Lindon Chase, who did not testify at trial (*id.* at 24-26) ("cell phone Confrontation Clause claim");

6. Juror 11 was dismissed without the proper inquiry under C.P.L. § 270.35 (*id.* at 7 ¶ 22D (under heading for "Ground Four" in the petition), 28-31); Prospective Juror 11, who is not the same individual as Juror 11, made a statement concerning her prior negative experience as a juror which tainted the jury pool (*id.* at 28-31); and Juror 4 violated Petitioner's right to the presumption of innocence by asking the trial judge to adjust a window blind because there was "a halo" behind the prosecutor (*id.* at 28-31) (collectively, "juror-related claims");

7. Counsel was ineffective for failing to seek the removal of Juror 4 (*id.* at 30-31) ("ineffective assistance claim")

---

[9]     Neither Respondent nor the Magistrate Judge construed the petition as reasserting this claim, previously raised on direct appeal.  Mindful of the long-standing requirement to interpret *pro se* habeas petitions liberally, *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983), the Court has construed the petition to reassert this claim, previously raised on direct appeal as the first point in Petitioner's appellate brief.

8. Petitioner's videotaped statement was involuntary because, although she was told she was not under arrest, she nevertheless was not free to leave and did not sign a written waiver of her rights after Ontario County Sheriff's Investigator John Falbo read her the *Miranda* warnings (*id.* at 26-27) ("involuntary statement claim"); and

9. The prosecutor committed multiple instances of misconduct during his summation (*id.* at 31-34) ("prosecutorial misconduct claim").

Petitioner stated that the claims she identified as Grounds One and Two (weight of the evidence claim, legal insufficiency claim, text message *Rosario* claim, and text message *Brady* claim), were "presented to the highest state court" (*id.* at 7 ¶ 23), while the claims she identified as Grounds Three and Four (evidentiary stipulation claim and juror-related claims) were "mixed claim[s]" which "require[] a 'stay and abeyance.'" (*Id.*).

Petitioner also stated that "any other claims within [the] . . . petition which could not submitted in the foregoing petition, are combined with both exhausted [and] unexhausted claims which requires a 'stay and abeyance.'" (*Id.*). She indicated that she was "in the process of submitting" a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 motion but did not provide a copy of the purported motion. (*Id.* at 9 ¶ 27(c)). Prior to Respondent answering the petition, Petitioner filed two motions to stay. (Dkt. 4, 5).

Respondent answered the petition (Dkt. 13) and filed a memorandum of law in opposition to the petition and the stay motions (Dkt. 13-1). Respondent argues that the following claims are unexhausted because they never have been raised in state court: the stipulation Confrontation Clause claim, the cell phone Confrontation Clause claim, the juror-related claims, the involuntary statement claim, and the prosecutorial misconduct

claim.  Respondent asserts that they must be deemed exhausted and procedurally defaulted because Petitioner has no available remedies in the New York State courts to exhaust them. Alternatively, Respondent contends that these claims are meritless.  Respondent did not address the exhaustion status or merits of the text message Confrontation Clause claim.

The Magistrate Judge denied the first and second motions to stay (Dkt. 4; Dkt. 5) without prejudice because they failed to provide sufficient information regarding which claims Petitioner sought to exhaust and failed to fulfill the criteria required to obtain a stay. (Dkt. 16).  Petitioner filed a third motion to stay (Dkt. 17), which Respondent opposed (Dkt. 21).

On September 1, 2022, the Magistrate Judge issued a Decision and Order finding that the petition "undisputed[ly]" was a mixed petition.  (Dkt. 23 at 7).  Accordingly, there were four procedural options available for consideration:  "(1) dismiss the petition in its entirety without prejudice; (2) deny the entire petition on the merits under 28 U.S.C. § 2245(b)(2); (3) allow the petitioner to delete the unexhausted claims and proceed with [her] exhausted claims; or (4) in limited circumstances, stay the petition to allow the petitioner to exhaust [her] unexhausted claims."  (*Id.* at 7 (quoting *Brooks v. Sticht*, No. 20-CV-1108 (JLS), 2022 WL 1190456, at *10 (W.D.N.Y. Apr. 21, 2022)).  The Magistrate Judge identified the exhausted claims as follows:  (1) the "First Claim" asserting that the second-degree murder conviction "was not supported by the evidence," i.e., the legal sufficiency and weight of the evidence claims listed under the heading "Ground One" in the form petition; and (2) the "Second Claim" "insofar as it asserts a violation of *Rosario*," i.e., the text message *Rosario* claim listed under the heading "Ground Two" in the form

petition. (*Id.* at 10).  The Magistrate Judge did not specifically discuss the exhaustion status of any of the remaining claims in the petition or identify with any particularity which claims could be withdrawn if Petitioner chose that option.

Petitioner sent a letter on September 15, 2022, "request[ing] to withdraw the unexhausted claims from [her] habeas petition and proceed with [the] exhausted claims in this court now." (Dkt. 24 at 1).

On February 28, 2023, the Magistrate Judge issued a Report and Recommendation recommending that the petition be dismissed and that a certificate of appealability be denied. (Dkt. 25).  The Magistrate Judge found that the weight of the evidence claim and the text message *Rosario* claim allege nothing more than violations of state law and, as such, are not cognizable on federal habeas review. (*Id.* at 18-19, 24-25).  The Magistrate Judge determined that there was legally sufficient direct and circumstantial evidence on which a rational jury could have found that Petitioner intended to cause the victim's death. (*See id.* at 20-24).  The Magistrate Judge concluded that in rejecting Petitioner's legal sufficiency claim, the Appellate Division did not rule in a manner contrary to, or unreasonably apply, clearly established Supreme Court precedent. (*See id.*).  Accordingly, the Magistrate Judge recommended finding that Petitioner was not entitled to habeas relief on the legal sufficiency claim. (*Id.* at 24).

Petitioner timely filed objections to the Report and Recommendation. (Dkt. 28).  In response, Respondent filed a letter requesting that the petition be denied.  (Dkt. 30).  Respondent did not address Petitioner' objections, instead relying on her previously filed

memorandum of law in opposition to the petition and the Magistrate Judge's Report and Recommendation.  (*Id.* at 1).

## III.   **DECISION AND ORDER DENYING STAY**

### A.   **Proper Characterization of the Third Motion to Stay As Dispositive or Non-Dispositive**

Courts in this Circuit have reached varying conclusions on whether motions for a stay and abeyance are treated as non-dispositive or dispositive motions.  *See*, *e.g.*, *Fay v. Annucci*, No. 20CIV187PAESLC, 2024 WL 449282, at *9 (S.D.N.Y. Feb. 5, 2024) ("[C]ourts in this Circuit have applied varied standards of review to [r]eports addressing . . . motions [to stay]." (citing *Mitchell v. Superintendent*, No. 20-CV-1189JLS(F), 2022 WL 856752, at *1 (W.D.N.Y. Mar. 23, 2022) (treating habeas petitioner's motion to stay and hold the petition in abeyance as non-dispositive), *Wright v. Poole*, No. 02-CV-8669 KMK MDF, 2012 WL 4478393, at *1-2 (S.D.N.Y. Sept. 28, 2012) (treating motion for a stay and abeyance as dispositive)); *see also McNeil v. Capra*, No. 13-CV-3048(RA), 2015 WL 4719697, at *3 (S.D.N.Y. Aug. 7, 2015) (applying less deferential *de novo* standard of review to report denying motion to amend habeas petition given that the statute of limitations has expired and the new claim was not independently timely).

The Second Circuit has not ruled on this issue; nor has the Supreme Court.  The Ninth Circuit held that in light of the interplay between the one-year statute of limitations on § 2254 petitions; the "total exhaustion" rule set forth in *Rose v. Lundy*, 455 U.S. 509

(1982);[10] and the strict limitations placed on the use of stay-and-abeyance procedures by

the Supreme Court in *Rhines*, 544 U.S. at 277-78, "a motion to stay and abey section 2254

proceedings is generally (but not always) dispositive of the unexhausted claims." *Mitchell*,

791 F.3d at 1171.  The Ninth Circuit explained:

> "[P]etitioners who come to federal court with 'mixed' petitions run the risk
> of forever losing their opportunity for any federal review of their
> unexhausted claims," [*Rhines*, 544 U.S. at 275], because, absent a stay, they
> are presented with two choices, each of which will ordinarily result in
> precluding some or all of their claims:  Either they may voluntary dismiss
> unexhausted claims, proceeding on only the exhausted ones, or they may
> decline to do so, leading to dismissal of the entire petition.  Either kind of
> dismissal would be, in form, without prejudice.  But, because the one-year
> statute of limitations is not tolled while the federal petition is pending,
> *Duncan v. Walker*, 533 U.S. 167, 181, 121 S. Ct. 2120, 150 L.Ed.2d 251
> (2001), and because state proceedings can be lengthy and unpredictable, in
> most cases either option will mean that a petitioner will be barred from
> federal review of some or all of [her] claims by the time [s]he exhausts them.

*Id.* at 1171-72 (first alteration in original).

For instance, if a petitioner elects to voluntarily dismiss her unexhausted claims, "it

is very likely that final state court exhaustion of unexhausted claims will come too late to

allow the claims to be heard in federal court." *Id.* at 1172.  There are generally two reasons

for this:  First, "the statute of limitations period will have run on the claims and they will

not relate back to the filing of the petition because they do not 'arise[ ] from the same core

of operative facts as a claim contained in the original petition.'" *Id.* (alteration in original)

(quoting *Ford v. Gonzalez*, 683 F.3d 1230, 1237 n.3 (9th Cir. 2012) (internal quotation

---

[10]      In *Rose v. Lundy*, the Supreme Court held that "district courts were required to
dismiss without prejudice 'mixed' section 2254 habeas petitions—that is, those including
both exhausted and unexhausted claims." *Mitchell v. Valenzuela*, 791 F.3d 1166, 1170-71
(9th Cir. 2015) (citing 455 U.S. at 510).

marks omitted in original)).  Second, "the remaining federal habeas petition will have been decided by the time the state courts act on the new habeas claims, triggering the onerous requirements for filing a second or successive habeas petition, 28 U.S.C. § 2244(b)."  *Id.* Sometimes, both circumstances will confront the habeas petitioner.  *Id.*

If, on the other hand, the petitioner "chooses to accept dismissal of the entire petition" under the total exhaustion rule set forth in *Rose v. Lundy*, 455 U.S. at 510, the petitioner "will very likely be barred from reasserting any of [her] claims in federal court by AEDPA's[11] statute of limitations."  *Mitchell*, 791 F.3d at 1172.  Whether the petitioner chooses to withdraw only the unexhausted claims or to accept dismissal of a mixed petition containing exhausted and unexhausted claims under the total exhaustion rule, the "result is the same as to the unexhausted claims:  The petitioner will lose the opportunity ever to present those claims to a federal habeas court."  *Id.*  Thus, the denial of a stay-and-abeyance will be "effectively dispositive of the unexhausted claims."  *Id.*

As outlined by the Magistrate Judge, the procedural options available to Petitioner—apart from granting a stay-and-abeyance—would have resulted in precluding some or all of her claims.  Based on the options identified by the Magistrate Judge, Petitioner chose was to voluntarily withdraw all the claims in the petition except for one cognizable claim and two noncognizable claims.  Leaving aside any potential timeliness problems she might face if she tried to return to federal court after initiating exhaustion proceedings on the voluntarily dismissed claims, the original petition will have been

---

[11]     "AEDPA" refers to the Antiterrorism and Effective Death Penalty Act of 1996.

decided by the time the state courts have acted on those claims.  This means that if Petitioner attempted to file a subsequent § 2254 petition raising the newly exhausted claims, she would face the "onerous," *Mitchell*, 791 F.3d at 1172, procedural hurdles to filing second or successive habeas petitions.  Even though the dismissal of Petitioner's voluntarily withdrawn claims was "in form, without prejudice," *id.*, it has effectively foreclosed Petitioner from obtaining habeas relief on these claims, *see id.* at 1172-74 (habeas petitioner's motion to stay and abey his habeas petition while he exhausted some of his claims in state court was dispositive as to his unexhausted claims, where choices available to petitioner were to either abandon his purportedly unexhausted claims or else face dismissal of his entire petition, effectively with prejudice, because of statute of limitations); *cf. Williams v. Shanley*, No. 20CV688JLSMJR, 2022 WL 17629736, at *5 n.1 (W.D.N.Y. Dec. 12, 2022) ("[T]he [report and recommendation] appears to treat the motion for a stay as dispositive.  But given the procedural history of this case, as discussed below, Williams ultimately was not precluded from exhausting his 'new' claims before the limitations period expired.  This Court need not decide if the motion is dispositive or nondispositive in this case, as this Court concludes that under either standard of review, a stay is not appropriate.").

Accordingly, the Court concludes that the third motion to stay was dispositive as to Petitioner's purportedly unexhausted and voluntarily withdrawn claims, and the Court accordingly will conduct a *de novo* review of the third motion to stay.

### B.    Stay-and-Abeyance Under *Rhines*

Before *Rhines*, the Second Circuit routinely employed a stay-and-abeyance approach when confronted with a "mixed petition"—that is, a habeas petition brought by a state prisoner under 28 U.S.C. § 2254 that included some exhausted claims and some fully unexhausted claims. *See Zarvela v. Artuz*, 254 F.3d 374 (2d Cir. 2001). In *Rhines*, the Supreme Court approved of *Zarvela*'s stay-and-abeyance procedure but stated that it "should be available only in limited circumstances" so as not to undermine the "twin purposes" of the federal habeas statute: "encouraging finality" and "streamlining federal habeas proceedings." 544 U.S. at 277.

The Supreme Court explained that because granting a stay "effectively excuses a petitioner's failure to present his claims first to the state courts," a "stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* However, "good cause" is not sufficient on its own; the petitioner also must show that the unexhausted claims have potential merit. *See id.* ("[E]ven if a petitioner had good cause for th[e] failure [to exhaust], the district court would abuse its discretion if it were to grant him a stay when his unexhausted claims are plainly meritless.") (citing 28 U.S.C. § 2254(b)(2)). The Supreme Court accordingly placed the following parameters on the district court's discretion to grant a stay-and-abeyance: (1) the petitioner demonstrates "good cause" for failing to exhaust the claims in state court before bringing the federal habeas petition; (2) the unexhausted claims are "potentially meritorious" or at least not "plainly meritless;" and (3) there is no

indication of "intentionally dilatory litigation tactics" on the petitioner's part.  *Id.* at 277-78.

As "[t]he stay and abeyance procedure set forth in *Rhines* is applicable when the Court is presented with a 'mixed' petition—when the petition is comprised of both exhausted and unexhausted claims," *Williams*, 2022 WL 17629736, at *4, the Court first considers the exhaustion status of the claims raised in the petition.  The Court then considers the application of the *Rhines* factors to this case.

### C.    Exhaustion Status of the Petition's Claims

"Before a federal court may grant habeas relief to a state prisoner, the prisoner must exhaust his remedies in state court."  *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *see also* 28 U.S.C. § 2254(b)(1)(A).  "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, . . . state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *Id.* at 845 (citing 28 U.S.C. § 2254(b)(1)). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam); *O'Sullivan*, 526 U.S. at 845).

In addition to fulfilling the "fair presentation" requirement, the petitioner must utilize all available state court remedies before bringing his or her claims to federal court.

*See O'Sullivan*, 526 U.S. at 845 ("Section 2254(c) provides that a habeas petitioner 'shall not be deemed to have exhausted the remedies available in the courts of the State . . . if [s]he has the right under the law of the State to raise, by any available procedure, the question presented." (ellipsis in original (quoting 28 U.S.C. § 2254(c)))).  The petitioner must utilize the correct procedural vehicle for the particular claim to be exhausted.  *See Kimbrough v. Bradt*, 949 F. Supp. 2d 341, 352 (N.D.N.Y. 2013) ("A claim is not properly exhausted when it is untimely, or if it is submitted to the state court by way of an incorrect procedural mechanism and never addressed." (citing *Ellman v. Davis*, 42 F.3d 144, 147 (2d Cir. 1994); *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991))).

To properly exhaust claims based on the trial record, a defendant in New York State "must first appeal his or her conviction to the Appellate Division, and then must seek further review of that conviction by applying to the Court of Appeals for a certificate granting leave to appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  A criminal defendant is entitled to only one direct appeal in New York State.  *See* N.Y. Ct. R. § 500.20(a)(2) (application seeking leave to appeal "shall indicate . . . that no application for the same relief has been addressed to a justice of the Appellate Division, as only one application is available").

Where a claim cannot be demonstrated on the basis of the pretrial or trial record, it is not appropriate for direct appeal.  *See, e.g.*, *People v. Gonzalez*, 210 A.D.3d 1005, 1006 (2d Dep't 2022) (finding that the "defendant's contentions regarding the [trial court]'s alleged mid-trial reversal of a pretrial ruling that does not appear on the record cannot be reviewed on direct appeal, as those contentions are based upon matter dehors the record");

*People v. Modesto*, 39 A.D.3d 567, 567 (2d Dep't 2007) (finding that the "defendant's claim that he was deprived of due process by the interpreter's alleged failure to file an oath of public office is based on matter dehors the record and cannot be reviewed on direct appeal").

In such a case, the defendant may exhaust the claim by presenting it to the trial court via a collateral post-conviction motion; typically, a motion to vacate the judgment pursuant to C.P.L. § 440.10. *See*, *e.g.*, *Reyes v. Phillips*, No. 02cv7319 (LBS), 2005 WL 475544, at *4 (S.D.N.Y. Mar. 1, 2005) ("[A] motion under N.Y. Crim. Proc. Law § 440.10 was the appropriate vehicle with which to exhaust [the] ineffective-assistance-of-counsel claim insofar as it relied upon evidence outside the record."). The petitioner then must seek leave to appeal the denial of the C.P.L. § 440.10 motion to the Appellate Division. *See*, *e.g.*, *Ture v. Racette*, No. 9:12cv01864 (JKS), 2014 WL 2895439, at *4 (N.D.N.Y. June 26, 2014) (finding that the petitioner did not complete one full round of appellate review as to claims raised in his C.P.L. § 440.10 motion where he did not seek leave to appeal the denial of that motion). New York State law does not allow a further discretionary appeal of the denial of relief under C.P.L. § 440.10. *Ramos v. Walker*, 88 F. Supp. 2d 233, 234, 235 & nn.3, 9 (S.D.N.Y. 2000).

A petitioner may exhaust a claim of ineffective assistance of appellate counsel by raising that claim to the Appellate Division in a motion for a writ of error *coram nobis*, *see Sweet v. Bennett*, 353 F.3d 135, 142 n.7 (2d Cir. 2003); and then seeking leave to appeal the denial of that motion to the Court of Appeals, *see Shomo v. Maher*, No. 04-CV-

4149KMK, 2005 WL 743156, at *3 (S.D.N.Y. Mar. 31, 2005) (citing *People v. Stultz*, 2 N.Y.3d 277, 281 (2004); N.Y. Crim. Proc. Law §§ 450.90(1), 460.10(5)(a)).

### 1. Legal Sufficiency Claim

Respondent argues that the legal sufficiency claim  was not fairly presented on direct appeal because Petitioner's appellate counsel did not "cite any Supreme Court law, or the United States Constitution, or any applicable federal constitutional concept, such as a deprivation of due process or a fair trial." (Dkt. 13-1 at 21).  Respondent contends that as a result of Petitioner's failure to fulfill the "fair presentation" requirement, the legal sufficiency claim is unexhausted and must be deemed exhausted and procedurally defaulted because Petitioner lacks any available remedies in state court to exhaust it.  The Magistrate Judge did not analyze Respondent's exhaustion argument and simply included the legal sufficiency claim as among the exhausted claims.  (*See* Dkt. 21 at 10).

Respondent is correct that appellate counsel did not cite federal law—let alone state law—in the portion of the brief arguing the legal sufficiency claim regarding the murder conviction.   Nor did he refer to due process or any constitutional provisions or amendments.  The only allusions to the nature of the claim occurred in the argument's point heading and the body of the brief, where appellate counsel stated that the evidence was "legally insufficient."  (SR: 2, 37, 38).  And the only legal authority appellate counsel cited was C.P.L. § 470.15(2)(a), which provides that "[u]pon a determination that the trial evidence adduced in support of a verdict is not legally sufficient to establish the defendant's guilt of an offense of which he was convicted but is legally sufficient to establish his guilt

of a lesser included offense, the court may modify the judgment by changing it to one of conviction for the lesser offense."  N.Y. Crim. Proc. Law § 470.15(2)(a).[12]

The Supreme Court has stated that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin*, 541 U.S. at 32. Thus, the Supreme Court held in *Baldwin* that the petitioner's state habeas petition did not "fairly present" a federal ineffective assistance of appellate counsel claim where the state petition did not explicitly say the words "ineffective assistance of appellate counsel," did not refer to federal constitutional amendments or provisions, and did not provide any case citations that might have alerted the state court to the alleged federal nature of the claim. *Id.* at 32-33.

The petitioner in *Baldwin* alternatively argued that because the applicable state law standards for adjudicating state and federal "inadequate/ineffective appellate assistance" claims were "identical," it was unnecessary to "indicate a claim's federal nature." *Id.* The petitioner reasoned that "by raising a state-law claim, he would necessarily 'fairly present' the corresponding federal claim." *Id.* However, the Supreme Court declined to consider that argument because it had not been addressed by the lower court. *Id.*

---

[12]     The trial court granted Petitioner's request to charge the jury on first-degree manslaughter and second-degree manslaughter as lesser included offenses of second-degree murder but denied the request to charge criminally negligent homicide.  (T: 1679, 1680-82, 1804).

In *Jackson v. Edwards*, 404 F.3d 612 (2d Cir. 2005), the Second Circuit was confronted with the question left open by *Baldwin*—whether "a federal claim [has] been 'fairly presented'" "[w]here state and federal claims share the same legal standard," and "the state court necessarily rejects the federal claim in ruling on the state claim." 404 F.3d at 620. The Second Circuit answered the question in the affirmative. *Id.* at 621.

In *Jackson*, the petitioner's federal claim was that the failure to instruct the jury on justification was so harmful as to deny him due process. *Id.* at 620. On appeal, he relied on state law to argue that the trial court erred in refusing to instruct the jury on the defense of justification because, on a reasonable view of the evidence, the fact-finder might have decided his actions were justified. *Id.* The Second Circuit observed that "[h]ad [he] instead argued that the trial court's failure to charge justification denied him due process under the Fourteenth Amendment, the Appellate Division's inquiry would have been the same." *Id.* The Second Circuit concluded that "because, in this case, the legal standards for his federal and state claims were so similar[,] . . . by presenting his state claim," the petitioner "also presented his federal claim." *Id.* at 621. Applying *Jackson* here, the Court concludes that Petitioner fairly presented her legal sufficiency claim to the state court.

At the outset, the Court notes there is a "long line of cases establishing a defendant's constitutional due process right to protection against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime charged," *Burke v. Mann*, No. 93-CV-5017 (RR), 1995 WL 860755, at *6 (E.D.N.Y. Dec. 4, 1995) (citing *In re Winship*, 397 U.S. 358, 364 (1970)), and thus are well within the mainstream of constitutional litigation, *id.* In *Winship*, the Supreme Court held that "the Due Process

Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." 397 U.S. at 364. The Supreme Court later extended *Winship* to the habeas context, holding that a prisoner challenging a state criminal conviction under § 2254 is entitled to habeas corpus relief under the Fourteenth Amendment's Due Process Clause when the evidence adduced at trial was insufficient to permit a rational trier of fact to find proof of guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 324.

The Supreme Court has interpreted *Winship* to mean that the evidence supporting a conviction is legally sufficient to satisfy due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). The New York Court of Appeals explicitly has acknowledged that "[t]he standard for reviewing the legal sufficiency of evidence in a criminal case is" the same standard articulated in *Jackson*. *People v. Contes*, 60 N.Y.2d 620, 621 (1983) (quoting and applying the *Jackson* standard). Thus, the state and federal standards for evaluating whether evidence is legally sufficient to satisfy due process are more than similar; they are identical.

Here, the Appellate Division specifically cited *Contes*, demonstrating its recognition that Petitioner had raised a claim that the evidence was legally insufficient to meet the minimum standards of due process. *Chase*, 158 A.D.3d at 1234 (citing *Contes*, 60 N.Y.2d at 621). In analyzing the legal sufficiency claim, the Appellate Division recited a portion of the *Jackson* standard, indicating that it was "[v]iewing the evidence in the light

most favorable to the [prosecution]." *Id.* The Appellate Division also was aware that Petitioner was asserting a separate claim under state law that the verdict was against the weight of the evidence, and the Appellate Division resolved both the legal sufficiency and weight of the evidence claims on the merits. *See id.*

The Court is satisfied that as a practical matter, Petitioner provided the Appellate Division with a fair opportunity to examine the issue of whether the prosecution adduced legally sufficient evidence of Petitioner's guilt to satisfy her right to due process. Furthermore, the Appellate Division in fact applied the *Jackson* standard when doing so. In light of the Second Circuit's holding in *Jackson*, the Court finds that Petitioner fulfilled the exhaustion requirement with regard to the legal sufficiency claim.

### 2.      Text Message Confrontation Clause Claim

Appellate counsel argued on direct appeal that the trial court erroneously limited defense counsel's use of *Rosario* material—the text messages sent by the prosecutor— during the cross-examination of Investigator Martin. According to appellate counsel, the trial court's ruling deprived Petitioner of the right of confrontation under the Sixth Amendment and prevented her from demonstrating to the jury the involuntariness of her statement, which amounted to non-harmless constitutional error. (SR: 12-16). Appellate counsel subsequently included this claim in the leave letter. (SR: 242-43). The Court finds that this claim, overlooked by Respondent and the Magistrate Judge, was properly exhausted.

3.   **Stipulation Confrontation Clause, Cell Phone Confrontation Clause, Juror-Related, Involuntary Statement, and Prosecutorial Misconduct Claims**

Respondent argues that the stipulation Confrontation Clause, cell phone Confrontation Clause, juror-related, involuntary statement, and prosecutorial misconduct claims are unexhausted because they were not raised on direct appeal.  (Dkt. 13-1 at 29, 30, 36, 39).  Respondent asserts that because they are record-based, Petitioner now lacks any means to exhaust them and they must be deemed exhausted but procedurally barred.  (*Id.*).

As Respondent notes, "[a]ny attempt to raise these claims at this stage as part of a direct appeal would be rejected because a criminal defendant is entitled to only one direct appeal and one application for leave to appeal to the Court of Appeals."  *Roa v. Portuondo*, 548 F. Supp. 2d 56, 78 (S.D.N.Y. 2008); *see also* N.Y. Ct. R. § 500.20(a)(2).  Collateral review of these claims by way of a C.P.L. § 440.10 motion is unavailable because the claims concern matters that appear on the trial record and could have been raised on direct appeal, but unjustifiably were not.  *See* N.Y. Crim. Proc. Law § 440.10(2)(c).[13]

"For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim

_____

[13]   Requiring denial of motion where "[a]lthough sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion, no such appellate review or determination occurred owing to the defendant's . . . unjustifiable failure to raise such ground or issue upon an appeal actually perfected by him or her unless the issue raised upon such motion is ineffective assistance of counsel."   N.Y. Crim. Proc. Law § 440.10(2)(c).

procedurally barred.'" *Grey v. Hoke*, 933 F.2d 117, 120 (2d Cir. 1991) (quoting *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989)).  "In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)."  *Id.* (citing 28 U.S.C. § 2254(c)).  Here, Petitioner no longer has "remedies available" to exhaust the Confrontation Clause, juror-related, involuntary statement, and prosecutorial misconduct claims, and they must be deemed exhausted.  *See id.*

However, "the procedural bar that gives rise to exhaustion[,] provides an independent and adequate state-law ground for the conviction and sentence" and renders the claim procedurally defaulted.  *Gray v. Netherland*, 518 U.S. 152, 162 (1996).  Habeas review of the claim is unavailable unless a petitioner "show[s] cause for the default and prejudice, or demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."  *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)).

Contrary to the implicit finding in the Magistrate Judge's Decision and Order denying the stay motion, the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, and prosecutorial misconduct claim are not fully unexhausted.  Instead, they must be deemed exhausted because there is an absence of corrective process in the courts of New York State.  As they were not unexhausted, they did not contribute to the petition being a "mixed petition," and their withdrawal on the basis of nonexhaustion was unnecessary.  Accordingly, the Court will reinstate these claims and will afford Petitioner the opportunity to attempt to overcome the procedural default by showing cause for the default, and

prejudice attributable thereto; or a fundamental miscarriage of justice, i.e., that she is actually innocent.

### 4.     Text Message *Rosario* Claim and Email *Rosario* Claim

Respondent argues that the text message and email *Rosario* claims assert no more than errors of New York State law that are not cognizable in a federal habeas corpus proceeding under 28 U.S.C. § 2254(a).  (Dkt. 13-1 at 26 (citing *Landy v. Costello*, 141 F.3d 1151, 1998 WL 105768 (Table) (2d Cir. 1998) ("To the extent that this claim is based on a *Rosario* violation, it must fail, because a habeas petition can only be granted to remedy some violation of federal law; the obligation to turn over *Rosario* material arises under state law.")).

Respondent did not argue that the *Rosario* claims are unexhausted or should be deemed exhausted and procedurally defaulted.   This is unsurprising given that noncognizable claims such as alleged violations of the *Rosario* rule are irrelevant to determining whether a habeas petition is a mixed petition.  *See French v. Pepe*, No. CIV.A. 94-11482-WGY, 1995 WL 170088, at *6 (D. Mass. Mar. 30, 1995) (stating that an issue which "is purely one of state law with no federal statutory or constitutional implications, . . . is thus neither cognizable, exhausted or not, in a habeas proceeding nor sufficient grounds to dismiss a petition as mixed" (citing *Tillett v. Freeman*, 868 F.2d 106, 107-08 (3d Cir. 1989); *Martin v. Solem*, 801 F.2d 324, 331 (8th Cir. 1986)).

In the Decision and Order denying the third stay motion, the Magistrate Judge characterized Respondent's papers as arguing that

all of Petitioner's grounds . . . are unexhausted and procedurally barred
because the one-year period of time in which to exhaust has now lapsed,
except for Petitioner's claimed *Brady* violation concerning the disposal
of the trash can . . . which is merely unexhausted but is possibly not procedurally
barred if, as Petitioner maintains, she learned of the asserted violation after
the direct appeal. . . .

(Dkt. 6 at 11 (citations to record omitted)).  The Magistrate Judge went on to find that while

Petitioner "does not argue otherwise, a plain review of" her appellate brief and leave letter

"establishes Petitioner did raise before both courts her challenges concerning a *Rosario*

violation, and her claim that the verdict was against the weight of the evidence."  (*Id.*

(citations to record omitted)).

The Magistrate Judge's characterization of Respondent's argument was erroneous.

Respondent did not argue that Petitioner's claims were unexhausted and procedurally

barred due to the expiration of the statute of limitations.  As discussed above, to the extent

Respondent argued that some claims were unexhausted but should be deemed exhausted

and procedurally defaulted, Respondent correctly ascribed the procedural bar to the lack of

available procedures by which to exhaust the claims in state court.  (*See* Dkt. 13-1 at 29,

30, 36, 39).

The Court next turns to the Magistrate Judge's conclusion that Petitioner exhausted

her *Rosario* claims.  Even assuming Petitioner could have fairly presented a *Rosario* claim

in federal constitutional terms for purposes of satisfying the exhaustion requirement,

Petitioner only included the text message *Rosario* claim in her leave application.  (*See* SR:

242-43).  The leave letter did not include, and could not have included, the *Rosario* claim

based on the email concerning the trash can because Petitioner reportedly did not learn of

the underlying facts until after her direct appeal, when she obtained a copy of her case file from her attorney.  Thus, the email *Rosario* claim has not been asserted in state court and was raised for the first time in the petition.

Because there is no indication that the email concerning the disposal of the trash can was part of the trial record, a *Rosario* claim based on the email could not have been raised on direct appeal.  Petitioner therefore could file another C.P.L. § 440.10 motion and not face a mandatory dismissal under C.P.L. § 440.10(2)(c).  But, as noted above, noncognizable claims such as violations of the *Rosario* are irrelevant to determining whether a petition is "mixed."  The Court therefore need not spend further time analyzing the exhaustion status of the *Rosario* claim premised on the nondisclosure of the email.

### 5.    Weight of the Evidence Claim

The Magistrate Judge found that the weight of the evidence claim was exhausted because it was raised in Petitioner's leave letter.  Because the claim is noncognizable, as the Magistrate Judge subsequently determined, its exhaustion status is irrelevant.

In any event, the conclusion that it was included in the leave letter is contradicted by the state court records.  Contrary to the Magistrate Judge's assertion that Petitioner raised the weight of the evidence claim in her leave application to the New York Court of Appeals, the only evidence-based claim as to which Petitioner requested review in her leave letter was the "legal insufficiency of the evidence for Murder 2nd." (SR: 243).  There is no mention of "weight of the evidence" in the leave letter.

It is well settled that "a claim of legal insufficiency is distinct from a claim of a verdict against the weight of the evidence."  *Moore v. Ercole*, No. 08-CV-04356 ENV,

2012 WL 3764060, at *4 n.4 (E.D.N.Y. Aug. 29, 2012) (citing *People v. Danielson*, 9 N.Y.3d 342, 348-49 (2007) (explaining the difference between legal insufficiency and weight of the evidence claims and stating that "[a] legally sufficient verdict can be against the weight of the evidence")).  In New York State, intermediate appellate courts "have the power to review the factual findings of the jury and the obligation to do so at the request of the defendant."  *People v. Miller*, 191 A.D.3d 111, 115 (4th Dep't 2020) (citing *Danielson*, 9 N.Y.3d at 348); *see also* N.Y. Crim. Proc. Law § 470.15(1) ("Upon an appeal to an intermediate appellate court from a judgment, sentence or order of a criminal court, such intermediate appellate court may consider and determine any . . . issue of fact involving error or defect in the criminal court proceedings which may have adversely affected the appellant."); *id.* § 470.15(5) ("The kinds of determinations of reversal or modification deemed to be on the facts include, but are not limited to, a determination that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence.").  This factual review power is "unique" and derives solely from state precedent as now codified in C.P.L. § 470.15(5).  *People v. Bleakley*, 69 N.Y.2d 490, 493-94 (1987).  Thus, a weight of the evidence argument "is a pure state law claim grounded in [C.P.L.] § 470.15(5), whereas a legal sufficiency claim is based on federal due process principles."  *Correa v. Duncan*, 172 F. Supp. 2d 378, 381 (E.D.N.Y. 2001) (citing *Jackson*, 443 U.S. at 318-19; *Bleakley*, 69 N.Y.2d at 495).

The scope of the appellate court's review is different for each type of claim.  When reversing a conviction on weight of the evidence grounds, "the appellate court sits as a 'thirteenth juror' and disagrees with the jury's resolution of the conflicting testimony."

*Tibbs v. Fla.*, 457 U.S. 31, 42 (1982).  By contrast, when reviewing a conviction for legal sufficiency, the appellate court "must defer to the jury's resolution of the weight of the evidence and the credibility of the witnesses."  *United States v. Josephberg*, 562 F.3d 478, 488 (2d Cir. 2009) (quoting *United States v. Miller*, 116 F.3d 641, 676 (2d Cir. 1997)). The appellate court may not reverse a conviction as based on legally insufficient evidence to satisfy the defendant's right to due process unless it can say that no rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt.  *Jackson*, 443 U.S. at 319.

Because weight of the evidence and legal sufficiency claims are legally and analytically distinct, Petitioner did not "fairly present" the weight of the evidence claim by mentioning only the legal sufficiency claim in her leave application.  Since a review of the weight of the evidence "may take place only in an intermediate appellate court," *Bleakley*, 69 N.Y.2d at 493, it would have been futile to include the weight of the evidence claim in the leave application to the Court of Appeals.

Moreover, even if Petitioner had specifically included the same weight of the evidence claim in the leave letter, she could not have "fairly presented" this purely state-law claim in federal constitutional terms.  *See Hernandez v. Conway*, 485 F. Supp. 2d 266, 275 (W.D.N.Y. 2007) ("Arguably, . . . it is impossible for a habeas petitioner to present a 'weight of the evidence' claim as a federal constitutional issue in order to exhaust it.").  In sum, to the extent that the Magistrate Judge found that the weight of the evidence claim was properly exhausted, such a finding was clearly erroneous.

### 6.     Text Message *Brady* Claim and Email *Brady* Claim

For the first time in the petition, Petitioner asserts that the prosecution violated *Brady* by failing to disclose (1) the text messages between Investigator Martin and the prosecutor, and (2) the email in which the prosecutor instructed Dr. Dirkmaat to dispose of the trash can containing some of the decedent's remains.  In other words, Petitioner has reframed the factual grounds underlying her *Rosario* claims as *Brady* claims.  The Magistrate Judge did not specifically analyze the exhaustion status of the *Brady* claims and apparently concluded that both *Brady* claims are fully unexhausted.

Respondent argues that the *Brady* claim based on the text messages is unexhausted and must be deemed exhausted and procedurally defaulted; and that the *Brady* claim concerning the email is unexhausted and can be rejected as meritless under 28 U.S.C. § 2254(b)(2).  (Dkt. 13 at 25-26).  The Court agrees with Respondent as to the exhaustion status of these two claims.

As noted above, Petitioner has already used the one direct appeal to which she is entitled.  *See* N.Y. Ct. R. § 500.20(a)(2).  If Petitioner attempted to bring a C.P.L. § 440.10 motion and raise the text message *Brady* claim, it would be rejected pursuant to C.P.L. § 440.10(2)(c) because sufficient facts appear on the trial record to have permitted Petitioner to raise it on direct appeal.  After all, Petitioner raised a *Rosario* claim premised on the same facts on direct appeal, and the Appellate Division considered the claim on the merits.  *See Chase*, 158 A.D.3d at 1234 (agreeing that the prosecution "improperly delayed turning over certain *Rosario* material" but finding that defendant "failed to demonstrate

substantial prejudice as a result thereof, and she is therefore not entitled to a new hearing or reversal of the judgment of conviction").

The foregoing procedural rules have resulted in Petitioner facing an absence of corrective process in state court to exhaust the text message *Brady* claim.  Therefore, it must be deemed exhausted and procedurally defaulted.  To the extent that it was among the claims found to be unexhausted, that finding was erroneous and it need not have been voluntarily withdrawn by Petitioner.  Accordingly, the Court reinstates the text message *Brady* claim.

However, the email *Brady* claim is not subject to mandatory dismissal under C.P.L. § 440.10(2)(c) because the email was not part of the trial record, and Petitioner therefore was not in the position to raise it on direct appeal.  Petitioner thus still has remedies available in state court as to the email *Brady* claim, which remains fully unexhausted.  To the extent that the Magistrate Judge concluded that it was unexhausted and contributed to the petition being "mixed," that finding was correct.  The Court will reinstate the email *Brady* claim.

### 7.    Ineffective Assistance Claim

Petitioner's claim of ineffective assistance is based on defense counsel's alleged error with regard to a comment made by Juror 4 as the prosecutor began his summation. Juror 4 asked the trial court, "Your Honor, can we—like they did over there, can we pull the blinds down?  Because—[the prosecutor's] really—Yeah, there's kind of a big halo over him right now."  (T: 1749).  According to Petitioner, that question meant that Juror 4 was "viewing the prosecutor as an angel-like image" and thus was biased in favor of the

prosecution.  (Dkt. 1 at 31).  Petitioner faults defense counsel for failing to ask the trial court to conduct an inquiry under C.P.L. § 270.35 to assess whether Juror 4 should be removed because her comment showed she had predetermined Petitioner's guilt.  Respondent argues that this claim is unexhausted but must be deemed exhausted and procedurally barred and is, in any event, meritless.  (Dkt. 13-1 at 35-36).

At the time Respondent filed her opposition memorandum of law, C.P.L. § 440.10(2)(c) did not exclude ineffective assistance of counsel claims from mandatory dismissal if the basis for the ineffectiveness was apparent on the trial record.  *See*, *e.g.*, *Sweet*, 353 F.3d at 140 ("[W]e conclude that Sweet's appellate counsel unjustifiably failed to argue this ineffective assistance claim on direct appeal despite a sufficient record, and consequently waived the claim under § 440.10(2)(c).  Accordingly, Sweet's claim is procedurally defaulted for the purposes of federal habeas review as well.").

After Respondent filed her opposition memorandum of law on February 18, 2020, the New York State Legislature amended C.P.L. § 440.10 to exempt ineffective assistance of counsel claims from the mandatory dismissal provisions of C.P.L. § 440.10(2)(b) and (c).  *See People v. Green*, 201 A.D.3d 814, 816 (2d Dep't 2022) ("[E]ffective October 25, 2021, CPL 440.10(2)(c) does not apply to the issue of ineffective assistance of counsel."); *see also Herring v. McCarthy*, No. 19-CV-6111 (CJS), 2022 WL 7326255, at *2 & n. 1 (W.D.N.Y. Oct. 13, 2022) (noting amendment).

As a result of the amendment, a court in New York State considering a C.P.L. § 440.10 motion may not deny ineffective assistance of trial counsel claims simply because they were based on errors apparent on the trial record, as was permissible under the former

C.P.L. § 440.10(2)(c).  Therefore, Petitioner would not face a mandatory procedural bar as to her ineffective assistance claim.  It is fully unexhausted and contributes to the petition being a mixed petition.  The Court reinstates the ineffective assistance claim.

### D.   The Petition is a Mixed Petition

After completing its exhaustion analysis of the claims raised by Petitioner, the Court disagrees with the Magistrate Judge as to which claims are exhausted, which claims are deemed exhausted but procedurally defaulted, and which claims are wholly unexhausted. At the time Petitioner filed her third motion to stay, the petition consisted of three groups of claims: (1) exhausted claims (the legal sufficiency claim and the text message Confrontation Clause claim); (2) noncognizable claims (the weight of the evidence claim, the text message *Rosario* claim, and the email *Rosario* claim); (3) the deemed exhausted but procedurally defaulted claims (the text message *Brady* claim, the stipulation Confrontation Clause claim, the cell phone Confrontation Clause claim, the juror-related claims, the involuntary statement claim, and the prosecutorial misconduct claim); and (4) the fully unexhausted claims (the email *Brady* claim and the ineffective assistance claim). The petition is a mixed petition and therefore the Magistrate Judge properly considered the appropriateness of a stay-and-abeyance in light of the *Rhines* factors.  The Court reviews that determination below.

### E.   Application of the *Rhines* Factors

The Magistrate Judge denied the third motion to stay because Petitioner failed to demonstrate "good cause" for failing to exhaust her claims before filing her habeas petition. *Rhines* did not provide a definition of "good cause."  *Glover v. Herbert*, 431 F. Supp. 2d

335, 337 (W.D.N.Y. 2006).  To date, "[n]either the Supreme Court nor the Second Circuit has yet defined the contours of 'good cause' in the context of stay and abeyance, and district courts in this Circuit have varied in their interpretations of the standard for 'good cause.'" *Id.* (collecting cases).  In a decision issued shortly after *Rhines*, the Supreme Court mentioned the "good cause" requirement in *dictum*, stating that "filing a 'protective' petition in federal court and asking the federal court to stay and abey the federal habeas proceedings until state remedies are exhausted . . . [as a method of coping with] reasonable confusion about whether a state filing would be timely will ordinarily constitute 'good cause' for [the petitioner] to file in federal court[.]"  *Pace v. DiGuglielmo*, 544 U.S. 408, 416 (2005).

A few courts in this Circuit have relied on the *Pace dictum* to define "good cause" more broadly to encompass something that is not necessarily external to the petitioner.  *See*, *e.g.*, *Whitley v. Ercole*, 509 F. Supp. 2d 410, 419 (S.D.N.Y. 2007) (hold that "a petitioner's showing of his confusion, if reasonable, concerning the delay in his state filing would satisfy the *Rhines* requirement of 'good cause'").

"[T]he majority" of district courts in this Circuit that have "addressed the issue at length have analogized the 'good cause' requirement to the requirement that a habeas petitioner demonstrate 'cause' to excuse other types of procedural defaults."  *Ramdeo v. Phillips*, No. 04-CV-1157 (SLT), 2006 WL 297462, at *5 (E.D.N.Y. Feb. 8, 2006) (collecting cases). "These courts have reasoned that 'good cause,' like 'cause' in the procedural default context, must arise 'from an objective factor external to the petitioner which cannot fairly be attributed to him or her.'"  *Id*.

Even in cases that "expressly reject the notion that 'good cause' is analogous to 'cause' for a procedural default," *id.* at *6, "the 'good cause' has arisen from external factors, not [the] petitioner's own decisions." *Id.* (citing *Ramchair v. Conway*, No. 04 CV 4241 (JG), 2005 WL 2786975, at *18 (E.D.N.Y. Oct. 26, 2005) (finding that the petitioner's "unexhausted claim of ineffective assistance of appellate counsel to be meritorious" and that he had "good cause" for not having raised it as there was "no reason to expect [him] to understand that his appellate counsel should have complained about the failure to grant the mistrial, not the failure to allow [a witness] to testify"), *adhered to,* 671 F. Supp. 2d 371 (E.D.N.Y. 2009)).

Petitioner asserts that she was reasonably confused about whether her proposed C.P.L. § 440.10 motion would be timely, and therefore she has shown "good cause" as contemplated by the Supreme Court in its *Pace dictum*. (Dkt. 17 at 1-2). The Magistrate Judge found that because a C.P.L. § 440.10 motion can be filed at any time after the judgment, Petitioner had not demonstrated "good cause," regardless of whether a strict or lenient "good cause" standard was applied. (Dkt. 23 at 9 (citing *Trappler v. Russell*, No. 21-CV-343-LJV, 2021 WL 3773650, at *2 (W.D.N.Y. Aug. 25, 2021) ("Trappler could have pursued any unexhausted claims not properly raised on direct appeal at any time [in a C.P.L. § 440.10 motion], and her ignorance of the law or state legal procedures does not constitute good cause." (citing, *inter alia*, *Ramirez v. Sup't of Shawangunk Corr. Facility*, No. 17CIV7185PAEHBP, 2019 WL 3714992, at *4 (S.D.N.Y. Aug. 6, 2019) ("On the record at hand, the Court has no basis to conclude that Ramirez, in foregoing pursuing state court relief for ineffective assistance for many years, was confused about whether a state

court § 440.10 motion would be timely. It may be that Ramirez was unaware that this avenue existed or how to utilize it, but that would not qualify as 'reasonable confusion' within the meaning of *Pace*.")).

On the record before the Court, there is no suggestion that Petitioner was confused about whether a C.P.L. § 440.10 motion would be timely.  To the contrary, she stated in her petition that she was "in the process of submitting a CPL 440.10 motion so that [she] can properly exhaust [her] remedies. . . ." (Dkt. 1 at 9).[14]  *See Holguin v. Lee*, No. 13 CIV. 1492 LGS JLC, 2013 WL 3344070, at *3 (S.D.N.Y. July 3, 2013) ("It is clear . . . that Holguin was not reasonably confused as to the exhaustion of his claims.  Indeed, he explicitly states in his motion that he is seeking a stay of his habeas petition so that he can exhaust his unexhausted claims in New York state court.  As such, Holguin cannot plausibly suggest that any 'reasonable confusion' should establish good cause.").  Insofar as it relates to the fully unexhausted, off-the-record claims, the Court agrees with the Magistrate Judge's finding that Petitioner's alleged confusion about the timeliness of a C.P.L. § 440.10 motion is not good cause for purposes of satisfying *Rhines*.

Even assuming that Petitioner was reasonably confused about the timing of a C.P.L. § 440.10 motion and that this confusion constituted good cause for her failure to exhaust her off-the-record claims, it would not provide good cause for failing to exhaust her record-

---

[14]     The Court notes that this assertion contradicts her new attempt to blame her failure to institute a C.P.L. § 440.10 motion on the fact that the Magistrate Judge did not issue a decision on her first stay motion, which she had filed on May 13, 2019, until August 9, 2021.  (Dkt. 17 at 1).  There is no evidence that Petitioner ever filed the C.P.L. § 440.10 motion that she referenced in her petition.

based claims (i.e., the claims that this Court has determined should be deemed exhausted and procedurally defaulted). Since those claims were apparent on the face of the trial record, they were required to have been raised on direct appeal. As discussed above, Petitioner has not alleged that appellate counsel was ineffective for failing to include them in the leave letter and complete one full round of the available appellate review process. There is no basis to find good cause for Petitioner's failure to exhaust her record-based claims before instituting this habeas petition. *See Chambers v. Conway*, No. 09 CIV. 2175(JGK), 2010 WL 1257305, at \*1 (S.D.N.Y. Mar. 29, 2010) ("First, the petitioner has failed to show good cause why he did not raise his state-court argument, which is based on the record in the case, on direct appeal. . . . Second, the claim is without merit because it could not be considered in state court." (citing N.Y. Crim. Proc. Law § 440.10(2)(c)).

Petitioner also asserts that "the COVID-19 pandemic is, most assuredly, an external factor" that has "impeded [her] efforts in complying with state procedures." (Dkt. 17 at 4). The Magistrate Judge did not address this argument. Petitioner has provided no particulars as to how the pandemic confounded her efforts to comply with state procedures. Therefore, Petitioner has not established that "the COVID-19 pandemic" constitutes good cause for her failure to exhaust her state remedies.

"The absence of 'good cause' for the failure to exhaust is fatal to Petitioner's ability to fulfill the *Rhines* standard." *Carr v. Graham*, 27 F. Supp. 3d 363, 365 (W.D.N.Y. 2014) (citing *Rhines*, 544 U.S. at 277). Accordingly, the third motion to stay properly was denied with prejudice.

F.      **Procedural Options Available to Petitioner**

Having denied Petitioner's third motion to stay to stay with prejudice, the Court finds that there are three remaining procedural options available to Petitioner:  (1) dismiss the petition in its entirety—the exhausted, noncognizable, deemed exhausted but procedurally defaulted, *and* fully unexhausted claims—without prejudice; (2) deny the entire petition on the merits under 28 U.S.C. § 2245(b)(2); or (3) allow the petitioner to delete the unexhausted claims and proceed with the remaining claims—the exhausted claims as well as the noncognizable claims and the deemed exhausted but procedurally defaulted claims.   As noted above, the noncognizable and deemed exhausted but procedurally defaulted claims do not contribute to the petition being a mixed petition.  Their presence in the petition does not mandate a dismissal under § 2254(b)(2).

If Petitioner elects the first option, the petition in its entirety will be dismissed *without* prejudice.  If Petitioner elects the second option, the petition in its entirety will be dismissed *with* prejudice.

If Petitioner elects the third option, she would delete the fully unexhausted claims (the ineffective assistance claim and the email *Brady* claim) *without* prejudice, and the petition then would consist of the following claims:  the exhausted claims (the legal sufficiency claim and the text message Confrontation Clause claim); the noncognizable claims (the text message *Rosario* claim, the email *Rosario* claim, and the weight of the evidence claim); and the deemed exhausted but procedurally defaulted claims (the stipulation Confrontation Clause claim, the cell phone Confrontation Clause claim, the

juror-related claims, the involuntary statement claim, the prosecutorial misconduct claim, and the text message *Brady* claim).

If Petitioner chooses the third option—deleting the fully unexhausted claims and proceeding on the remaining claims—she will have the opportunity to attempt to overcome the procedural default of each of the deemed exhausted but procedurally defaulted claims by showing cause for the default and prejudice attributable thereto; or a fundamental miscarriage of justice, i.e., she is actually innocent.

## IV.   <u>CONCLUSION</u>

For the reasons above, the Decision and Order (Dkt. 23) is rejected to the extent it erroneously determined that some claims were fully unexhausted and were required to be withdrawn in order to prevent the petition from being dismissed as a mixed petition. Accordingly, the following previously withdrawn claims are reinstated as part of the petition: the stipulation Confrontation Clause claim, the cell phone Confrontation Clause claim, the juror-related claims, the involuntary statement claim, the prosecutorial misconduct claim, the text message *Brady* claim., the email *Brady* claim, and the ineffective assistance claim.  The petition consists of the foregoing claims plus the legal sufficiency claim, the text message Confrontation Clause claim, the text message *Rosario* claim, the email *Rosario* claim, and the weight of the evidence claim.

The Decision and Order (Dkt. 23) is accepted to the extent that it denied the third motion to stay (Dkt. 17) with prejudice for failure to establish good cause under *Rhines*. However, the Decision and Order (Dkt. 23) did not correctly inform Petitioner as to which claims were exhausted, which claims were fully unexhausted, or which claims must be

deemed exhausted but procedurally defaulted.  This incorrect information may have affected Petitioner's decision-making with regard to which procedural option she chose for her mixed petition.  Therefore, the Court will afford Petitioner a renewed opportunity to choose among the three available procedural options, outlined above.

Within **30 days** of the date of entry of this Decision and Order, Petitioner **must** inform the Court in writing which of the three available procedural options she elects to pursue:  (1) dismiss the petition in its entirety—the exhausted, noncognizable, deemed exhausted but procedurally defaulted, *and* fully unexhausted claims—without prejudice; (2) deny the entire petition on the merits under 28 U.S.C. § 2245(b)(2); or (3) allow the petitioner to delete the unexhausted claims and proceed with the remaining claims—the exhausted claims as well as the noncognizable claims and the deemed exhausted but procedurally defaulted claims.

If Petitioner chooses the third option and wishes to attempt to make a showing to overcome the procedural default of the deemed exhausted but procedurally defaulted claims, she **must** do so in writing, also within **30 days** of the date of entry of this Decision and Order.  Petitioner may combine her choice of procedural option and her attempt to overcome the procedural defaults in the same written response.

The Court defers review of the Report and Recommendation until after it receives Petitioner's responses.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:      April 23, 2024
            Rochester, New York