UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ROSE CHASE,                                          **DECISION AND ORDER**

                 Petitioner,            1:19-CV-00617 EAW-LGF

     v.

SUPERINTENDENT EILEEN
RUSSELL,

               Respondent.

_____

## I.    **INTRODUCTION**

*Pro se* petitioner Rose Chase ("Petitioner"), a prisoner in Respondent's custody, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. (Dkt. 1). The matter was referred to United States Magistrate Judge Leslie G. Foschio ("Magistrate Judge") pursuant to 28 U.S.C. § 636(b)(1). (Dkt. 15). Before the Court[1] are the Magistrate Judge's Report and Recommendation recommending that the petition be dismissed (Dkt. 25) and Petitioner's timely objections to the Report and Recommendation (Dkt. 28). For the reasons below, the Court accepts the Magistrate Judge's Report and Recommendation (Dkt. 25), denies Petitioner's request for a writ of habeas corpus, and dismisses the petition.

---

[1]     This matter was transferred to the undersigned on April 3, 2024. (Dkt. 31).

## II.   BACKGROUND

### A.   State Proceedings

In connection with the June 14, 2012 death of her husband, Adam Chase ("the decedent" or "the victim"), Petitioner was charged with second-degree (intentional) murder (New York Penal Law ("P.L.") § 125.25(1)), tampering with physical evidence (P.L. § 215.40(2)), and endangering the welfare of a child (P.L. § 260.10(1)).  (SR: 55-56).[2]  At a jury trial in Ontario County Court of New York State (Kocher, J.), the prosecution presented circumstantial and direct evidence of Petitioner's role in causing the victim's death, including Petitioner's videotaped statement to police.  (Dkt. 13-6).  In that statement, Petitioner admitted that she pushed the decedent down two flights of stairs with the intent to kill him and secreted the body in the basement of their home for several weeks.[3]  She then placed the decomposing body parts in several trash bags and transported them in her car to a wooded property behind her mother's house.  There she built a large bonfire, burned the decedent's remains, and disposed of the ashes and unburned bones in a trashcan.  The

---

[2]     Citations to "SR:" refer to the Bates-stamped page numbers at the bottom of the state court records, filed by Respondent at Docket 13-2.  Citations to "H:" refer to pages of the pre-trial suppression hearing; citations to "T:" refer to pages of the trial transcript; and citations to "S:" refer to pages of the sentencing hearing.  These transcripts were filed by Respondent at Docket 13-5.  Citations to "VS:" refer to pages of the transcript of Petitioner's videotaped statement to Ontario County Sheriff's Investigators Lee Martin ("Investigator Martin") and John Falbo ("Investigator Falbo"), filed by Respondent at Docket 13-6.  All page citations are to the original pagination.

[3]     "In view of [Petitioner]'s conviction, [the Court] summarize[s] the facts in the light most favorable to the verdict."  *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012) (citing *United States v. Riggi*, 541 F.3d 94, 96 (2d Cir. 2008)).

endangering the welfare of a child count was based on the fact that Petitioner's young son was in the car when she transported the bags containing the decedent's body parts.

The jury convicted Petitioner as charged in the indictment.  (SR: 54).  She was sentenced on January 15, 2014, to 23 years to life in prison on the second-degree murder conviction; one year and four months to four years in prison on the evidence-tampering conviction; and one year in jail on the child-endangerment conviction, those sentences to be served concurrently.  (*Id.*).

On direct appeal, Petitioner's appellate counsel asserted the following grounds for relief: (1) the trial court's refusal to allow defense counsel to use *Rosario*[4] material (i.e., the text messages between the prosecutor and Investigator Martin) when cross-examining Investigator Martin denied Petitioner the right of confrontation under the Sixth Amendment and was not harmless error because it prevented her from proving the involuntariness of her confession; (2) the prosecutor violated *Rosario* by failing to disclose, *inter alia*, text messages between the prosecutor and Investigator Martin; (3) the second-degree murder

---

[4]    Under the rule announced in *People v. Rosario*, 9 N.Y.2d 286 (1961), the prosecutor is required "to disclose to the defense (1) '[a]ny written or recorded statement,' (2) 'made by a person whom the prosecutor intends to call as a witness at trial,' and (3) 'which relates to the subject matter of the witness's testimony.'"  *People v. Kelly*, 88 N.Y.2d 248, 251 (1996) (alteration in original (quoting N.Y. Crim. Proc. Law § 240.45(1)(a))).  At the suppression hearing conducted on July 24, 2013, Investigator Martin testified that during his interrogation of Petitioner on December 13, 2012, he was exchanging text messages with Ontario County District Attorney R. Michael Tantillo ("prosecutor"), who was observing through a one-way window.  (H: 132-33).  At one point, the prosecutor sent a text message to Investigator Martin instructing him to "be more forceful" in his questioning of Petitioner.  (H: 135-36).  At trial, when defense counsel questioned Investigator Martin about the text message, the prosecutor objected on the basis of relevancy.  The trial court sustained the objection, ruling that although defense counsel could establish the fact that the prosecutor sent the message, its contents were inadmissible.  (T: 1632-35).

conviction was based on legally insufficient evidence, and the verdict was against the weight of the evidence; (4) the conviction for endangering the welfare of a child was based on legally insufficient evidence; and (5) the sentence was harsh and excessive and should be reduced in the interest of justice.  (*See* SR: 2, 5-6, 12-43).  A majority of the Appellate Division, Fourth Department, of New York State Supreme Court ("Appellate Division") reversed the conviction for endangering the welfare of a child as unsupported by legally sufficient evidence.  *People v. Chase*, 158 A.D.3d 1233, 1234 (4th Dep't 2018); (SR: 237-39).  The judgment, as modified, was unanimously affirmed.  *See id.* at 1234-36.

Petitioner sought leave to appeal as to the Confrontation Clause issue based on the limitations on using the text messages during Investigator Martin's cross-examination, the *Rosario* violation involving the text messages, the legal sufficiency claim, and the sentencing claim.  (SR: 242-43).  The New York Court of Appeals denied leave to appeal on May 8, 2018.  *People v. Chase*, 31 N.Y.3d 1080 (2018); (SR: 248).

### B.    Federal Habeas Proceeding

Petitioner timely filed her habeas petition on May 3, 2019.  (Dkt. 1 at 9).[5]  The petition asserts the following grounds for habeas relief:

1. The verdict for second-degree murder was against the weight of the evidence, and the prosecution's evidence was legally insufficient to prove causation and intent (*id.* at 6 ¶ 22A (under the heading for "Ground One" in the petition), 15-20) ("weight of the evidence claim" and "legal sufficiency claim," respectively);

---

[5]    Page citations to pleadings filed in this proceeding are to the pagination automatically generated by the Court's case management and electronic filing system (CM/ECF) and located in the header of each page.

2.  The prosecution violated *Rosario* by failing to disclose the text messages exchanged by the prosecutor and Investigator Martin during the interrogation of Petitioner, specifically, a text directing Investigator Martin to "be more forceful" when questioning Petitioner (*id.* at 7 ¶ 22B (under the heading for "Ground Two" in the petition), 21-22, 35-37); and an email in which the prosecutor allegedly instructed expert witness Dennis Dirkmaat, Ph.D. ("Dr. Dirkmaat") to dispose of a trashcan that contained some of the victim's remains (*id.* at 22-24, 39-41) ("text message *Rosario* claim" and "email *Rosario* claim," respectively);

3.  The prosecution violated *Brady v. Maryland*, 373 U.S. 83 (1963), based on the belated disclosure of the text and email on which the *Rosario* claims are based (*id.* at 21-22, 35-37) ("text message *Brady* claim" and "email *Brady* claim," respectively);

4.  Petitioner's right of confrontation under the Sixth Amendment and due process right to litigate the voluntariness of her confession were violated by the trial court's refusal to allow defense counsel to cross-examine Investigator Martin using the text messages exchanged with the prosecutor (*id.* at 21-22) ("text message Confrontation Clause claim");[6]

5.  Petitioner's rights under the Sixth Amendment's Confrontation Clause were violated by the parties' evidentiary stipulation regarding the results of DNA testing on some of the decedent's remains (*id.* at 7 ¶ 22C (under heading for "Ground Three" in the petition), 24-26, 38) ("stipulation Confrontation Clause claim"); and by Silvia Chase's testimony about the contents of the cell phone belonging to her husband, Lindon Chase, who did not testify at trial (*id.* at 24-26) ("cell phone Confrontation Clause claim");

6.  Juror 11 was dismissed without the proper inquiry under C.P.L. § 270.35 (*id.* at 7 ¶ 22D (under heading for "Ground Four" in the petition), 28-31); Prospective Juror 11, who is not the same individual as Juror 11, made a statement concerning her prior negative experience as a juror which tainted the jury pool (*id.* at 28-31); and Juror 4 violated Petitioner's right to the presumption of innocence by asking the trial judge to adjust a

---

[6]      Neither Respondent nor the Magistrate Judge construed the petition as reasserting this claim, previously raised on direct appeal as the first point in Petitioner's appellate brief. Mindful of the long-standing requirement to interpret *pro se* habeas petitions liberally, *Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983), the Court has construed the petition to reassert this claim.

window blind because there was "a halo" behind the prosecutor (*id.* at 28-31) (collectively, "juror-related claims");

7.  Counsel was ineffective for failing to seek the removal of Juror 4 (*id.* at 30-31) ("ineffective assistance claim");

8.  Petitioner's videotaped statement was involuntary because, although she was told she was not under arrest, she nevertheless was not free to leave and did not sign a written waiver of her rights after Investigator Falbo read her the *Miranda* warnings (*id.* at 26-27) ("involuntary statement claim"); and

9.  The prosecutor committed multiple instances of misconduct during his summation (*id.* at 31-34) ("prosecutorial misconduct claim").

Petitioner stated that she "presented to the highest state court" the claims identified as Grounds One and Two (weight of the evidence claim, legal insufficiency claim, text message *Rosario* claim, and text message *Brady* claim).  (*Id.* at 7 ¶ 23).  She indicated that the claims identified as Grounds Three and Four (stipulation Confrontation Clause claim and juror-related claims) were "mixed claim[s]" which "require[] a 'stay and abeyance.'" (*Id.*).

Petitioner also stated that "any other claims within [the] . . . petition which could not be submitted in the foregoing petition, are combined with both exhausted [and] unexhausted claims which requires a 'stay and abeyance.'"  (*Id.*).  She indicated that she was "in the process of submitting" a motion to vacate the judgment pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10 motion.  (*Id.* at 9 ¶ 27(c)).  However, she did not provide a copy of the purported motion.

Prior to Respondent answering the petition, Petitioner filed two motions to stay (Dkt. 4, Dkt. 5), which the Magistrate Judge denied without prejudice (Dkt. 16).

After Respondent answered the petition (Dkt. 13, Dkt. 13-1), Petitioner filed a third motion to stay (Dkt. 17).  On September 1, 2022, the Magistrate Judge issued a Decision and Order denying the stay motion with prejudice.  (Dkt. 23).  The Magistrate Judge found that the petition was a mixed petition and identified the exhausted claims as follows:  (1) the "First Claim" asserting that the second-degree murder conviction "was not supported by the evidence," i.e., the legal sufficiency and weight of the evidence claims listed under the heading "Ground One" in the form petition; and (2) the "Second Claim" "insofar as it asserts a violation of *Rosario*," i.e., the text message *Rosario* claim listed under the heading "Ground Two" in the form petition.  (*Id.* at 10).  The Magistrate Judge did not specifically discuss the exhaustion status of any of the other claims in the petition.

After finding that a stay-and-abeyance was unwarranted, the Magistrate Judge informed Petitioner of the three remaining procedural options for her mixed petition.  In response, Petitioner sent a letter on September 15, 2022, "request[ing] to withdraw the unexhausted claims from [her] habeas petition and proceed with [the] exhausted claims in this court now."  (Dkt. 24 at 1).

On February 28, 2023, the Magistrate Judge issued a Report and Recommendation recommending that the petition be dismissed and that a certificate of appealability be denied.  (Dkt. 25).  Petitioner timely filed objections to the Report and Recommendation.  (Dkt. 28).  In response, Respondent filed a letter requesting that the petition be denied.  (Dkt. 30).  Respondent did not address Petitioner' objections, instead relying on her previously filed memorandum of law in opposition to the petition (Dkt. 13-1) and the Magistrate Judge's Report and Recommendation (Dkt. 25).  (Dkt. 30 at 1).

- 7 -

In a Decision and Order entered April 23, 2024 (Dkt. 32), this Court accepted in part and rejected in part the Magistrate Judge's Decision and Order (Dkt. 23) denying the third motion to stay (Dkt. 17). The Court determined that the third motion to stay was dispositive and should have been resolved as a report and recommendation. (Dkt. 32 at 2, 11-14). Since the stay motion was dispositive, the Court reviewed the Decision and Order under a *de novo* standard. (*Id.* at 2, 15-38).

The Court agreed with the Magistrate Judge that Petitioner failed to demonstrate entitlement to a stay-and-abeyance of her mixed petition pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005). (*Id.* at 2, 15-16, 34-38). However, the Court disagreed with the Magistrate Judge's exhaustion analysis. (*Id.* at 2, 16-34).

More specifically, the Court found that there are only two fully unexhausted claims which contribute to the petition being a mixed petition—the email *Brady* claim and the ineffective assistance claim. (*Id.* at 2, 31-34). The Court further determined that the legal sufficiency claim and the text message Confrontation Clause claim (which had been overlooked by Respondent and the Magistrate Judge) were fully exhausted. (*Id.* at 19-23). The Court found that the weight of the evidence claim, the text message *Rosario* claim, and the email *Rosario* claim were non-cognizable claims premised on state law and, as such, irrelevant to determining whether the petition was mixed. (*Id.* at 26-30). Finally, the Court found that the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, prosecutorial misconduct claim, and text message *Brady* claim should have been deemed exhausted but procedurally defaulted. (*Id.* at 24-26, 31-32).

- 8 -

The Court determined that as result of the Magistrate Judge's errors in identifying which claims were fully unexhausted and which claims should have been deemed exhausted, Petitioner elected to withdraw some claims that, in fact, were not fully unexhausted and did not contribute to the petition being a mixed petition. (*Id.* at 2, 16-34). Accordingly, the Court reinstated all the previously dismissed claims. (*Id.* at 2, 40-41).

Having decided that a stay-and-abeyance of Petitioner's mixed petition was not warranted, the Court set forth the three procedural options available and the consequences of each one. (*Id.* at 39-42). The Court also deferred ruling on the Report and Recommendation (Dkt. 25) and Petitioner's timely objections thereto (Dkt. 28) until after Petitioner responded with her selection of a procedural option. (Dkt. 32 at 3, 42). Petitioner was informed that if she selected the third option, she could use her response to attempt to overcome the procedural default of the deemed exhausted claims. (*Id.*).

Petitioner filed a timely response (Dkt. 33) indicating that she wished to proceed with the third option. (*Id.* at 1 (citing Dkt. 32 at 39, 41)). As outlined in the Court's previous Decision and Order, the third option involves deleting the fully unexhausted claims (the ineffective assistance claim and the email *Brady* claim), dismissing them without prejudice as unexhausted, and proceeding with the remaining claims in the petition. (Dkt. 32 at 39). Petitioner also addressed the procedural default of the deemed exhausted claims. (*Id.* at 2-4).

III.   **DISCUSSION**

A.     **Overview of the Petition**

With Petitioner's selection of the third procedural option, the fully unexhausted ineffective assistance claim and the email *Brady* claim are deleted from the petition and are dismissed without prejudice.

The petition now consists of three categories of claims—the non-cognizable claims, the exhausted claims, and the deemed exhausted but procedurally defaulted claims. The non-cognizable claims are the weight of the evidence claim, the text message *Rosario* claim, and the email *Rosario* claim. The exhausted claims consist of the legal sufficiency claim and the text message Confrontation Clause claim. The deemed exhausted but procedurally defaulted claims are comprised of the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, prosecutorial misconduct claim, and text message *Brady* claim.

B.     **Procedural Default**

The Court first considers whether Petitioner can overcome the procedural default of the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, prosecutorial misconduct claim, and text message *Brady* claim.

Habeas review of a procedurally defaulted claim is unavailable unless a petitioner "show[s] cause for the default and prejudice, or demonstrate[s] that failure to consider the claim will result in a miscarriage of justice (i.e., the petitioner is actually innocent)."

*Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (citing *Coleman v. Thompson*, 501 U.S. 722, 748-50 (1991)).

Cause to excuse a procedural default "must be something external to the petitioner, something that cannot fairly be attributed to him [or her]." *Coleman*, 501 U.S. at 753. The prejudice prong requires the habeas petitioner to show "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his [or her] actual and substantial disadvantage, infecting his [or her] entire trial with error of constitutional dimensions." *Murray v. Carrier*, 477 U.S. 478, 494 (1986) (ellipsis in original (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982))).

Petitioner asserts that her appellate counsel's failure to raise the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, prosecutorial misconduct claim, and text message *Brady* claim on direct appeal constitutes "cause" for their procedural default. (*See* Dkt. 33 at 2-3). Petitioner argues that appellate counsel's errors resulted in prejudice to her direct appeal and her "ability to exercise the law today." (*Id.* at 4).

Ineffective assistance of counsel may constitute cause for a petitioner's failure to pursue a constitutional claim provided that counsel's ineffectiveness itself rises to the level of a Sixth Amendment violation. *See Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (stating that "ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is itself an independent constitutional claim" (emphasis in original)). In addition, "the exhaustion doctrine 'requires that a claim of ineffective assistance be presented to state courts as an independent claim before it may be used to

establish cause for a procedural default' in the context of a petition for a federal writ of habeas corpus."  *Scott v. Fisher*, 652 F. Supp. 2d 380, 406 (W.D.N.Y. 2009) (quoting *Murray*, 477 U.S. at 489); *see also Swail v. Hunt*, 742 F. Supp. 2d 352, 360 (W.D.N.Y. 2010) ("Ineffective assistance of counsel can constitute 'cause' but only if it amounts to truly deficient representation as measured by [f]ederal constitutional standards, and if the claim of ineffective assistance has been separately exhausted in the state courts.").

Petitioner does not have an exhausted, meritorious claim of ineffective assistance of appellate counsel based on the failure to raise the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, prosecutorial misconduct claim, and text message *Brady* claim on direct appeal.  Indeed, Petitioner has never suggested that appellate counsel was ineffective in handling her appeal.  Therefore, Petitioner has not demonstrated cause for defaulting on the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, prosecutorial misconduct claim, and text message *Brady* claim.

Because the cause and prejudice test is phrased in the conjunctive, Petitioner's failure to demonstrate cause is fatal to her ability to excuse the procedural default.  *See Murray*, 474 U.S. at 496 (upholding "adherence to the cause and prejudice test 'in the conjunctive'" (quoting *Engle v. Isaac*, 456 U.S. 107, 134 (1982))).  The Court therefore need not consider the prejudice prong.  *Stepney v. Lopes*, 760 F.2d 40, 45 (2d Cir. 1986).

The alternative to showing cause and prejudice is to fulfill the fundamental miscarriage of justice exception.  A fundamental miscarriage of justice occurs when "a

constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496.  This exception is "narrow." *Calderon v. Thompson*, 523 U.S. 538, 559 (1998) (quoting *Sawyer v. Whitley*, 505 U.S. 333, 340 (1992)).  "'To be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

Although Petitioner has argued that the evidence was legally insufficient to establish her guilt beyond a reasonable doubt, "'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998)).  There is no suggestion in any of her filings in the state courts or in this Court that Petitioner has new evidence demonstrating that she is actually, factually innocent.  Because the record is devoid of facts supporting a plausible claim of actual innocence, Petitioner cannot fulfill the fundamental miscarriage of justice exception.

As Petitioner is unable to show cause and prejudice or a fundamental miscarriage of justice, the stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim, prosecutorial misconduct claim, and text message *Brady* claim are subject to an unexcused procedural default and are dismissed on that basis.

**C.    The Claims Addressed in the Report and Recommendation**

In reviewing a magistrate judge's report and recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate [judge]."  28 U.S.C. § 636(b)(1)(C).  The district court "shall make a *de novo* determination of those portions of the report or specified proposed findings or

recommendations to which objection is made." *Id.* "When a party makes only conclusory or general objections, or simply reiterates the original arguments, the [district] [c]ourt will review the [report and recommendation] strictly for clear error." *Molefe v. KLM Royal Dutch Airlines*, 602 F. Supp. 2d 485, 487 (S.D.N.Y. 2009) (collecting cases).

The Report and Recommendation addressed the weight of the evidence claim, the legal sufficiency claim, and the text message *Rosario* claim. The Report and Recommendation did not address the text message Confrontation Clause claim or the email *Rosario* claim, which the Court reviews in Section III.D, below.

### 1. Weight of the Evidence Claim

Petitioner did not assert any objections regarding the Report and Recommendation's disposition of her claim that the verdict was against the weight of the credible evidence. As the Magistrate Judge correctly concluded, this claim is based solely on New York State law and is not reviewable in this federal habeas corpus proceeding. (*See* Dkt. 25 at 18-19 (citing *McKinnon v. Sup't, Great Meadow Corr. Facility*, 422 F. App'x 69, 75 (2d Cir. 2011) ("[T]he argument that a verdict is against the weight of the evidence states a claim under state law, which is not cognizable on habeas corpus. . . .")). Accordingly, the weight of the evidence claim is dismissed as not cognizable.

### 2. Legal Sufficiency Claim

Where a claim has been "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a writ of habeas corpus "shall not be granted . . . unless the adjudication of the claim . . . was contrary to, or involved an unreasonable application of, clearly

established Federal law, as determined by the Supreme Court of the United States[,]" 28 U.S.C. § 2254(d)(1), or "was based on an unreasonable determination of the facts" in light of the record before the state court, *id.* § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id.* § 2254(e)(1).

The legal sufficiency claim was adjudicated on the merits by the Appellate Division, and the Magistrate Judge correctly subjected this adjudication to review under AEDPA. The Magistrate Judge found that the Appellate Division did not rule in a manner contrary to, or unreasonably apply, clearly established Supreme Court precedent by holding that there was legally sufficient direct and circumstantial evidence on which a rational jury could have found that Petitioner intended to cause the victim's death. (*See* Dkt. 25 at 20-24).

In her objections, Petitioner takes issue with the Magistrate Judge's recommendation that the evidence at trial[7] was legally sufficient to prove intent and causation. (*See* Dkt. 28 at 1-2). In particular, Petitioner contends that there was insufficient evidence to prove her "culpable mental state at the moment of the victim's death." (*Id.* at 2). Petitioner argues that contrary to the Magistrate Judge's conclusion, the "[i]ntent to cause death at the moment of [her] action of pushing [the] victim down a staircase cannot

---

[7] The Magistrate Judge comprehensively summarized the evidence presented at Petitioner's trial. (*See* Dkt. 25 at 6-15). The Court assumes familiarity with that factual summary and refers to specific portions of the transcript and other items of evidence only as necessary to resolve Petitioner's objections.

be inferred from [her] actions and surrounding circumstances." (*Id.* at 1). The Court will treat Petitioner's arguments as specific objections and accordingly will review *de novo* this aspect of the Report and Recommendation.

Evidence is legally sufficient to satisfy due process if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original). Where the trial record "supports conflicting inferences," the Court "must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *McDaniel v. Brown*, 558 U.S. 120, 133 (2010) (quoting *Jackson*, 443 U.S. at 319).

Here, after "[v]iewing the evidence in the light most favorable to the [prosecution]," the Appellate Division "conclude[d] that it is legally sufficient to establish defendant's intent to kill inasmuch as such intent 'may be inferred from defendant's conduct as well as the circumstances surrounding the crime.'" *Chase*, 158 A.D.3d at 1234-35 (some internal quotation marks omitted (quoting *People v. Badger*, 90 A.D.3d 1531, 1532 (4th Dep't 2011))). The Appellate Division noted that "[i]n addition to certain statements of defendant from which the jury could infer that she intended to kill the victim, the [prosecution] presented evidence that, on the day of the victim's death, defendant and the victim had an argument." *Id.* at 1235. Furthermore, there was "no dispute" that Petitioner was "in fact solely responsible for the victim's death, hid the body for several weeks at her home, and

then transported the body to her mother's house where she cremated the body and disposed of the remains in a trash can."  *Id.*

The Court's analysis of the legal sufficiency claim begins with identifying the substantive elements of Petitioner's crime of conviction.  *See Jackson*, 443 U.S. at 324 n.16.  As relevant here, "[a] person is guilty of murder in the second degree when . . . [w]ith intent to cause the death of another person, [s]he causes the death of such person. . . ." N.Y. Penal Law § 125.25(1).  Petitioner only challenges whether the prosecution sufficiently proved that she intended to cause the victim's death.  (*See* Dkt. 28 at 1-2). "Relevant state law determines in this case whether a rational juror could have found the element of intent satisfied."  *Mallette v. Scully*, 752 F.2d 26, 31-32 (2d Cir. 1984).

"A person acts intentionally with respect to a result or to conduct described by a statute defining an offense when his [or her] conscious objective is to cause such result or to engage in such conduct."  N.Y. Penal Law § 15.05(1).  "Intent is established by proving what was in the defendant's mind at the time of the crime."  *Stone v. Stinson*, 121 F. Supp. 2d 226, 247 (W.D.N.Y. 2000) (citing *Mallette*, 752 F.2d at 32).  "Because intent is formed in the mind in secrecy . . . , a determination of whether a deliberate intent was formed must be drawn from all the circumstances of the case."  *Mallette*, 752 F.2d at 32.  For this reason, "[c]ircumstantial evidence" is "indispensable" in proving intent.  *Id.*; *see also Fratarcangelo v. Smith*, 792 F.2d 40, 43 (2d Cir. 1986) ("Intent may be inferred and need not be proved by the defendant's own statement.").  Indeed, "circumstantial evidence is as persuasive as direct evidence."  *Mallette*, 752 F.3d at 32.  Such circumstantial evidence may include a defendant's actions subsequent to commission of the crime, *id.*, such as

- 17 -

"falsehood and evasion."  *People v. Conroy*, 97 N.Y. 62, 80 (1884) (cited in *Mallette*, 75 F.3d at 32).

As the Appellate Division found, the prosecution presented both direct and circumstantial evidence of Petitioner's intent.  The direct evidence consisted of Petitioner's videotaped statement on December 13, 2012, to Investigators Martin and Falbo, which was played for the jury.[8]  In that statement, Petitioner explained that minutes before the decedent's death, they had argued bitterly.  (VS: 5).  Petitioner had been caught kissing one of her coworkers at a local park, and she had just disclosed that the victim was not the father of her four-year-old son.  (*Id.*).  The decedent became "furious" and "punched the wall."  (VS: 5, 10).  When Petitioner "went to grab him," he "did push [her] away," and she "went to grab him again."  (VS: 5, 10-11).  Petitioner said that she did not know if the decedent tried to push her away again or if she "grabbed him wrong," but "his foot caught the stairs and he tumbled down the stairs," hitting his head on the open door at the bottom.  (VS: 5-6, 11-12).

Later in the statement, Petitioner admitted that when they were arguing at the top of the stairs, "subconsciously [she] did want to push [the decedent]."  (VS: 37).  When Investigator Falbo asked if she did in fact push him, she replied, "I'm going to have to say yes."  (*Id.*).  Petitioner admitted she "knew he was falling," and agreed with Investigator Falbo that she "gave him a final shove because [she] wanted him to fall down those stairs."  (*Id.*).  She did so because she was "pissed" at him.  (*Id.*).

---

[8]    The videotaped interrogation and the transcript of the interrogation were introduced at trial as People's Exhibits 242 and 243, respectively.  (*See* SR: 227).

Petitioner agreed with Investigator Martin that when "she grabbed [the decedent] the final time," the "only . . . thought that was going through [her] head" was getting him "the hell out of" her and her son's lives.  (VS: 69-70).  She admitted that she previously had contemplated divorcing him but opted against it because she knew he would "get [her] 401K and everything," and she believed he "would have tried to take [her] to the cleaners." (VS: 76, 79).

Petitioner stated that after the decedent came to rest at the bottom of the stairs, she was not sure if he was still alive.  (*See* VS: 7).  However, she "thought [she] was better off with him dead" and agreed with Investigator Falbo that was "why [she] didn't call 911 to get him help."  (VS: 23).  Instead, Petitioner "[g]rabbed a bag out from the kitchen," "[w]iggled the bag underneath [the decedent]," and dragged him to the top of the stairwell right in front of the basement."  (VS: 39).  She cleared everything out from the stairwell, "giving [her]self some more room."  (VS: 40).  She "[g]rabbed him," "gave him another shove into the basement," and "just let gravity do its work."  (*Id.*).  The decedent hit his head at the bottom of the stairs and started bleeding.  (*Id.*).  Certain he was dead after being pushed down two flights of stairs and hitting his head on concrete (VS: 70), Petitioner left him there overnight (VS: 41-42).

The following day, Petitioner dragged the decedent by his feet to a lower portion of the basement, folded up his body, and covered him with some boards and a tarp to make it look like a table.  (VS: 14).  Petitioner did so because her mother-in-law had told her that the sheriff wanted to talk to her.  (VS: 13).  Petitioner "didn't want the sheriff to see [the victim] there 'cause [she] knew he would arrest [her] right on the spot."  (*Id.*).

After about six weeks, Petitioner moved the decedent's body, which had started decomposing into pieces, to a wooded area behind her mother's house in Yates County. (VS: 50-55). Petitioner built a large bonfire in the woods and placed the decedent's body parts on the fire. (VS: 56-57). She explained that she burned the body because she did not want it to be found, noting that if anyone located it, "chances [were] [she] would get nailed for murder." (VS: 60).

Over the next five hours, Petitioner stirred the bonfire to ensure thorough incineration of the body parts; she also smashed the decedent's skull so that it was not recognizable. (VS: 62-64). The following day, Petitioner "scooped [the decedent] into the trashcan," specifically, the "biggest pieces" of bone that did not burn. (VS: 63-64).

Petitioner admitted that for the next six months, she engaged in a "[r]use" to deflect attention from herself and to suggest that the victim, of his own volition, had left their house and was still alive. (VS: 44, 49). For instance, she sent fake text messages from the decedent's phone, she removed his laptop from their house, and put a note purporting to be from him on their refrigerator. (VR: 15-16, 42-44).

In her objections, Petitioner asserts that the trial testimony supports the conclusion that "the push was in the midst of an altercation" between her and the decedent, who had "punched a hole in the wall and immediately beforehand pushed [her] at the top of the staircase." (Dkt. 28 at 2). Petitioner reasons that it was "fair to say" that her "push [was] reactionary, and reciprocal," versus a "certainty to kill, or part of a scheme certain to kill." (*Id.*). Petitioner argues that based on the evidence at trial, including her own statements, it would have been "reasonable and rational" to conclude that she "did not anticipate or

- 20 -

intend" for the decedent to die "from a push down a staircase in the midst of a mutual struggle." (*Id.*).

These arguments concerning what inferences should be drawn from the testimony and evidence already were made by defense counsel to the jury during summation.  In particular, defense counsel emphasized the portions of Petitioner's statement tending to show that the decedent's death was an accident.  (*See* T: 1713-18).  Defense counsel pointed out that Petitioner expressed fear that "everyone was going to think it was a murder, that [she] offed him on purpose" (T: 1714 (quotation to record omitted)), and argued that Petitioner's confession was the result of Investigators Falbo and Martin repeatedly stating they did not believe her (T: 1714-19).  In addition, as defense counsel observed, a number of Petitioner's admissions were not in her words; instead, they consisted of her agreeing with the investigators' leading questions.  (T: 1716-18).  Defense counsel urged the jury to question whether Petitioner's statement was a "true confession."  (T: 1719).  However, as evidenced by their guilty verdict, the jurors apparently rejected defense counsel's arguments and chose to believe the view of the evidence urged by the prosecution.

The jury was exclusively responsible for resolving conflicts in the witnesses' testimony, weighing the evidence, and drawing "reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Revisiting these determinations is beyond the purview of a habeas court. *See*, *e.g.*, *Wilson v. Capra*, No. 20-4140-PR, 2023 WL 7179268, at *2 (2d Cir. Nov. 1, 2023) ("[N]one of [the] purported credibility issues identified by Wilson rendered the testimony of either eyewitness unworthy of reliance by a rational jury.

The defense presented these issues to the jury, and there is no basis to disturb the jury's credibility assessment.").

"[T]he only question under *Jackson* is whether [the jury's] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  The Appellate Division answered that question in the negative, a finding which is conclusive unless it was "objectively unreasonable," *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (quoting *Renico v. Lett*, 599 U.S. 766, 773 (2010)).  The Court finds that the Appellate Division's ruling was not "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).  Therefore, Petitioner has not satisfied AEDPA's preconditions on habeas relief.  The Magistrate Judge correctly recommended finding that the legal sufficiency claim does not provide a basis for habeas relief.  The legal sufficiency claim is dismissed as meritless.

### 3.    Text Message *Rosario* Claim

New York State's so-called "*Rosario* rule" requires that "prior to the cross-examination of a prosecution witness, a defendant must be provided with a copy of any written or recorded statement relating to the subject matter of the witness's testimony." *Green v. Artuz*, 990 F. Supp. 267, 275 (S.D.N.Y. 1998).  The Magistrate Judge correctly concluded that the prosecution's disclosure obligations under *Rosario* are solely a matter of state law and therefore Petitioner's text message *Rosario* claim is not cognizable on habeas review.  (Dkt. 25 at 24).

In her objections, Petitioner asserts that her constitutional rights were violated as a result of "a forced, or coerced, confession where the District Attorney texted interrogators 'Be more forceful' during questioning." (Dkt. 28 at 2). Petitioner acknowledges that "the violation was brought through appeals under NY State *Rosario* rule," but asserts that the "violation infringing on Constitutional protections [during the interrogation] is cognizable." (*Id.*).

Petitioner's objection to the Magistrate Judge's resolution of the text message *Rosario* claim does not provide any basis to refute his correct conclusion that an alleged *Rosario* violation is not cognizable on habeas review. Instead, the objection relates to the text message Confrontation Clause claim—that the trial court's curtailment of defense counsel's use of the text message constituting *Rosario* material violated her right of confrontation and prevented her from demonstrating that her confession was involuntary. (Dkt. 28 at 3-4). This claim was not addressed by Respondent or the Magistrate Judge, but the Court will evaluate it below.

### D.    Claims Not Addressed in the Report and Recommendation

#### 1.    Email *Rosario* Claim

Petitioner asserts that the prosecution violated the *Rosario* rule by failing to disclose an email[9] in which the prosecutor allegedly instructed forensic expert Dr. Dirkmaat to

---

[9]    The emails attached to the petition are from an individual named Kevin Henderson ("Henderson"), who appears to be an employee of Ontario County, to Dr. Dirkmaat and other individuals asking them to send him an "introductory bio" in connection with an upcoming conference. (Dkt. 1 at 40-41). There is no mention of a trashcan, let alone Petitioner's criminal proceeding, in those emails. In her response (Dkt. 33), Petitioner has quoted from, and attached, the complete email thread (*id.* at 4, 7-8). Dr. Dirkmaat asked

dispose of a trashcan that contained some of the decedent's remains.  (*See* Dkt. 1 at 22-24, 39-41).  For the same reasons discussed above in connection with the text message *Rosario* claim, the Court concludes that the email *Rosario* claim does not present a cognizable constitutional issue and must be dismissed on that basis.

### 2.    Text Message Confrontation Clause Claim

Petitioner argued on direct appeal that her right of confrontation under the Sixth Amendment was violated by the trial court's limitation on defense counsel's cross-examination of Investigator Martin.  In particular, defense counsel was permitted to inquire whether Investigator Martin communicated with the prosecutor during Petitioner's interview but could not question Investigator Martin regarding the specific contents of their communications.  (SR: 12-16 (citing T: 1632-35)).  Petitioner argued that the trial court's ruling was erroneous and unfairly prevented her from convincing the jury that her confession was involuntary.  (*See id.*).  Petitioner concluded that the constitutional error was not harmless beyond a reasonable doubt under New York State's harmless error standard.  (SR: 16 (citing *People v. Crimmins*, 36 N.Y.2d 230 (1975)).

The Appellate Division noted that the trial court "is granted broad discretion in making evidentiary rulings in connection with the preclusion or admission of testimony[,] and such rulings should not be disturbed absent an abuse of discretion."  *Chase*, 158 A.D.3d at 1234 (alteration in original (quoting *People v. Acevedo*, 136 A.D.3d 1386, 1387 (4th

---

Henderson "whether [he] should return the metal trashcan as well, or discard it?"  (*Id.* at 4, 7).  Henderson replied that the "DA does not need garbage can."  (*Id.*).

Dep't 2016))).  The Appellate Division concluded that the ruling in Petitioner's case "did not constitute an abuse of discretion."  *Id.*

The Appellate Division did not refer to the Confrontation Clause when addressing this claim, instead framing the issue as a challenge to the trial court's evidentiary ruling. "In general, evidentiary rulings by a state court based upon state law do not present a federal constitutional question upon which habeas relief may be granted."  *Robinson v. Artus*, 664 F. Supp. 2d 247, 264 (W.D.N.Y. 2009) (citing *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991)).  In any event, the Court need not determine whether the Appellate Division adjudicated Petitioner's text message Confrontation Clause claim on the merits for purposes of 28 U.S.C. § 2254(d) because even under a *de novo* standard of review, it does not warrant habeas relief.  *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010) ("Courts can . . . deny writs of habeas corpus under § 2254 by engaging in *de novo* review when it is unclear whether AEDPA deference applies, because a habeas petitioner will not be entitled to a writ of habeas corpus if his or her claim is rejected on *de novo* review, *see* § 2254(a).").

"A violation of a defendant's confrontation rights does not, standing alone, require reversal of a judgment of conviction."  *Cotto v. Herbert*, 331 F.3d 217, 253 (2d Cir. 2003). "Rather, violations of the Confrontation Clause are subject to harmless error analysis."  *Id.*; *see also United States v. McClain*, 377 F.3d 219, 222 (2d Cir. 2004) ("It is well established that violations of the Confrontation Clause, if preserved for appellate review, are subject to harmless error review, . . . and *Crawford* [*v. Washington*, 541 U.S. 36 (2004),] does not suggest otherwise.").

"[I]n § 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in *Brecht* [*v. Abrahamson*, 507 U.S. 619, 637 (1993)]." *Fry v. Pliler*, 551 U.S. 112, 121 (2007).  *Brecht* applies "whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in *Chapman* [*v. California*, 386 U.S. 18, 24 (1967)]." *Id.* at 121-22.  The Supreme Court observed in *Fry* that given its "frequent recognition" that AEDPA's amendments to the federal habeas statute "limited rather than expanded the availability of habeas relief," *id.* at 119, "it is implausible that, without saying so, AEDPA replaced the *Brecht* standard of 'actual prejudice,' with the more liberal AEDPA/*Chapman* standard which requires only that the state court's harmless-beyond-a-reasonable-doubt determination be unreasonable." *Id.* at 119-20 (citation and some internal quotation marks omitted).  To demonstrate harmfulness under *Brecht*, a habeas petitioner must establish that the constitutional error "had substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice" to the defense.  507 U.S. at 637.

According to Petitioner, the alleged Confrontation Clause violation was not harmless because it prevented defense counsel from conducting a fulsome exploration of the evidence supporting her argument that coercive police tactics rendered her confession involuntary.  (SR: 12-16).  Voluntariness of a defendant's statement to police is determined by assessing the "totality of the circumstances." *Arizona v. Fulminante*, 499 U.S. 279, 285-86 (1991).  In applying this test, the relevant factors "center around three sets of circumstances: (1) the characteristics of the accused, (2) the conditions of interrogation,

and (3) the conduct of law enforcement officials." *Green v. Scully*, 850 F.2d 894, 901-02 (2d Cir. 1988). "[C]oercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Standing alone, the prosecutor's act of sending the text message telling Investigator Martin to "be more forceful" established nothing about the actual circumstances of Petitioner's interrogation. The relevant question was what effect, if any, the text message actually had on Investigator Martin's demeanor and mode of questioning. The evidence relevant to answering that question was the videotape of Petitioner's interrogation, which the jury viewed in its entirety. Whether or not the prosecutor sent the text message did not assist the jury in determining whether Investigator Martin's conduct during the interrogation caused Petitioner's "will to be overborne at the time [s]he confessed." *Green*, 850 F.2d at 900 (citing *Lynumn v. Illinois*, 372 U.S. 528, 534 (1963)). For this reason, allowing defense counsel to conduct the cross-examination of Investigator Martin using the prosecutor's text message "would not have materially changed the cross-examination and therefore would not have influenced the jury's verdict." *Lainfiesta v. Artuz*, 253 F. 3d 151, 158 (2d Cir. 2001).

Therefore, the Court finds that any error in the trial court's limitation on the cross-examination of Investigator Martin did not have a substantial and injurious effect on the jury's determination as to whether Petitioner's confession was voluntary or was the product of coercive police activity. Nor did it have a substantial and injurious effect on the jury's

determination of Petitioner's guilt.  Because any error was harmless under *Brecht*, the text message Confrontation Clause claim does not warrant habeas relief and is dismissed.

## IV.      **CONCLUSION**

For the reasons above, the email *Brady* claim and the ineffective assistance claim are excised from the petition and dismissed without prejudice as unexhausted.

The Court accepts the Report and Recommendation (Dkt. 25) insofar as it found that the text message *Rosario* claim and weight of the evidence claim are not cognizable on habeas review and should be dismissed with prejudice.  Although the email *Rosario* claim was not addressed in the Report and Recommendation, the Court independently finds that it is also not cognizable on habeas review.  Accordingly, the Court dismisses the text message *Rosario* claim, the email *Rosario* claim, and the weight of the evidence claim as not cognizable.

The Court also accepts the Report and Recommendation (Dkt. 25) insofar as it found that the legal sufficiency claim does not warrant habeas relief.  The Court dismisses the legal sufficiency claim as meritless.

With regard to the text message Confrontation Clause claim that was not addressed in the Report and Recommendation, the Court independently finds that it does not warrant habeas relief.  Accordingly, the Court dismisses the text message Confrontation Clause claim.

With regard to the reinstated claims (stipulation Confrontation Clause claim, cell phone Confrontation Clause claim, juror-related claims, involuntary statement claim,

prosecutorial misconduct claim, and text message *Brady* claim), the Court dismisses them without reaching the merits because they all are subject to an unexcused procedural default.

The request for a writ of habeas corpus is denied, and the petition (Dkt. 1) is dismissed.  Because Petitioner has not fulfilled the standard in 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability under 28 U.S.C. § 2253(c)(1).

The Clerk of Court is directed to close this case.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       June 17, 2024
             Rochester, New York